1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7 TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA, et al.,

8

9                    Plaintiffs,

        v.

10 NORTHWEST PIPE COMPANY, et al.,

11                    Defendants.

12

CASE NO. C17-5098 BHS

ORDER GRANTING IN PART
AND DENYING PART
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT,
GRANTING DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND
GRANTING DEFENDANT'S
MOTION FOR LEAVE TO FILE
AN AMENDED ANSWER

13        This matter comes before the Court on the following motions: Defendant Norwest

14 Pipe Company's ("NPC") motion for partial summary judgment (Dkt. 14); Plaintiffs

15 Travelers Property Casualty Company of America's ("Travelers") and The Phoenix

16 Insurance Company's ("Phoenix") (collectively "Plaintiffs") motion for summary

17 judgment (Dkt. 17); and NPC's motion for leave to amend its answer to the complaint

18 (Dkt. 26). The Court has considered the pleadings filed in support of and in opposition to

19 the motions and the remainder of the file and hereby rules as follows:

20

21

22

ORDER - 1

1

## I.   FACTUAL BACKGROUND

2       The factual background of this action and the underlying litigation between NPC

3   and the Greater Vancouver Water District are set forth in the Court's previous order. Dkt.

4   38.

5       On February 8, 2017, Plaintiffs filed their complaint in the instant action. Dkt. 1.

6   Plaintiffs seek a declaratory judgment that they owe no duty to defend or indemnify in

7   the underlying dispute between NPC and the Water District. *Id.* at 21.

8       On March 30, 2017, NPC moved for partial summary judgment on the issue of

9   whether Plaintiffs have a duty to defend in the underlying lawsuit. Dkt. 14. On April 13,

10   2017, Plaintiffs moved for summary judgment. Dkt. 17.

11       On May 4, 2017, NPC moved for leave to amend its answer to the complaint and

12   to assert new counterclaims. Dkt. 26.

13       On May 12, 2017, NPC and the Water District responded to Plaintiffs' motion for

14   summary judgment. Dkts. 28, 29. Also on May 12, 2017, Plaintiffs responded to NPC's

15   motion for partial summary judgment. Dkt. 31. On May 15, 2017, Plaintiffs filed a

16   response to NPC's motion for leave to amend its answer. Dkt. 33. On May 26, 2017,

17   NPC and Plaintiffs filed replies on their respective motions for summary judgment. Dkts.

18   36, 37.

19       On June 22, 2017, the Court entered an order that included findings of fact

20   regarding the scope of coverage under NPC's insurance policy with Plaintiffs. Dkt. 38.

21   After finding that the underlying litigation constituted a "mixed" action involving some

22   allegations which stated covered claims, the Court requested additional briefing on

1   whether there exists a reasonable basis for allocating the costs of NPC's defense in the

2   underlying litigation. *Id.* The Court also requested that the parties address whether NPC's

3   proposed amended answer (which seeks to add new counterclaims) would be futile in

4   light of the Court's findings. *Id.*

5          On July 7, 2017, the parties submitted their supplemental briefs. Dkts. 39, 40, 43.

6   On July 14, 2017, the parties filed their supplemental replies. Dkts. 44, 46.

## II.    DISCUSSION

### A.    Allocation of Defense Costs

9          In its previous order, the Court concluded that the underlying litigation raised

10  allegations conceivably covered by the policy. Specifically, the underlying complaint

11  appears to allege "property damage" to the circumferential welds. The Court noted that

12  such "property damage" could come in the form of either physical injury or loss of use,

13  as either is conceivable under the allegations set forth in the underlying complaint.

14  However, the Court further found that the other damages alleged in the underlying

15  complaint, which are the primary focus of that lawsuit, either fail to qualify as "property

16  damage" or are subject to exclusion.

17         In Washington, "mixed" lawsuits involving both covered and uncovered claims do

18  not require the insurer to defend the entire lawsuit if an "effective means exists for

19  prorating the costs of defense between the claims for which the defendant insurer

20  provided no coverage from those which it did cover." *Nat'l Steel Const. Co. v. Nat'l*

21  *Union Fire Ins. Co. of Pittsburgh*, 14 Wn. App. 573, 576 (1975). Indeed, the Washington

22  Supreme Court has "held that defense costs must be allocated when there exists a

1   reasonable basis for doing so." *Baugh Const. Co. v. Mission Ins. Co.*, 836 F.2d 1164,

2   1173 (9th Cir. 1988) (citing *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 853 (1970)).[1]

3          Plaintiffs argue that there are aspects of the underlying litigation that can be

4   segregated from the covered claim of property damage to the circumferential welds. As

5   an example, they point to the anticipated fees and costs related to financial expert

6   discovery on damages stemming from delay to the Twin Tunnels Project. However, the

7   Court is not convinced by this argument or this particular example. For instance, while

8   the majority of such an expert's testimony would likely address many issues unrelated to

9   alleged damage to the circumferential welds, it is also just as likely that such testimony

10   would discuss, at least in some part, the delay costs directly attributable to the removal

11   and replacement of the damaged circumferential welds. More importantly, however, the

12   most central aspects of this litigation involve issues that are substantially interrelated with

13   NPC's potential liability for damage to the circumferential welds: e.g., the causation of

14   the grout plug and circumferential weld failures. Therefore, the Court finds that there is

15   no reasonable basis upon which to allocate defense costs that exist at this time.

16   _____

17          [1] In 2013, the Washington Supreme Court concluded that defense costs paid by an insurer are not subject to reimbursement, even in the event that it is subsequently determined that there was no duty to defend. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 887 (2013) ("*Immunex*"). In reaching this conclusion, the Washington Supreme Court cited favorably to the reasoning in *Shoshone First Bank v.*

18   *Pac. Employers Ins. Co.*, 2 P.3d 510, 514 (Wy. 2000), where the Wyoming Supreme Court "refus[ed] to allocate costs between covered claims and uncovered claims in a 'mixed' action." *Immunex*, 176 Wn.2d at

19   883. This is a strong indicator that the Washington Supreme Court may be receptive to an argument that, in a mixed lawsuit, the duty to defend attaches to the entire lawsuit and not just the covered claims. All of

20   the Washington cases dealing with allocation of defense costs predate the Washington Supreme Court's decision in *Immunex*. As the Court is faced with in this situation, it seems nearly impossible to prorate defense costs before the underlying litigation even occurs, a practical reality that makes it difficult to

21   reconcile decisions like *Waite* with the subsequent holding of *Immunex* that defense costs under a reservation of rights are not recoupable by insurers. Nonetheless, as the law exists presently, the

22   Washington Supreme Court's decision in *Waite* remains controlling law.

1    This is not to say that Plaintiffs must necessarily continue the defense through the

2  conclusion of the underlying litigation. Indeed, "an insurer is required to give the insured

3  the benefit of the doubt, and must continue its defense until it can conclusively establish a

4  claim is not covered by the insurance policy." *State Farm Fire & Cas. Co. v. El-*

5  *Moslimany*, 178 F. Supp. 3d 1048, 1062 (W.D. Wash. 2016) (citing *Expedia, Inc. v.*

6  *Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014)). Therefore, if at some later point

7  Plaintiffs can conclusively establish that the underlying litigation does not include a claim

8  stemming from property damage to the circumferential welds, they may renew their

9  motion for summary judgment. Plaintiffs should be cautious, however, that any renewed

10  motions do not prejudice its insured's tort defense. *See id.* at 1061–62 (citing *Mut. of*

11  *Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 918 (2007)).

12    Accordingly, the Court finds that the claims in the underlying litigation are (at

13  least at this point) substantially interrelated and Plaintiffs' duty to defend presently

14  extends to the full breadth of the underlying lawsuit.

15  **B.    Duty to Indemnify**

16    As noted in the Court's previous order, the only allegations in the complaint

17  conceivably covered by NPC's policy with Plaintiffs are those that implicate damages

18  arising from physical injury or loss of use of the failed circumferential welds. Because

19  the underlying litigation is ongoing, it is premature for the Court to enter an order

20  concluding that Plaintiffs are or are not liable on covered claims in the underlying

21  litigation. However, this does not prevent the Court from prospectively finding that,

22

1    should the Water District prevail in the underlying lawsuit, Plaintiffs will only be liable

2    for "property damage" to the circumferential welds, as that term is defined in the policy.

3    **C.      Motion for Leave to Amend Answer**

4           NPC has also moved for leave to amend its answer. Dkt. 26. NPC seeks to add

5    extra-contractual counterclaims for bad faith and violations of the Washington Consumer

6    Protection Act ("CPA"). Plaintiffs oppose the amendment on the basis that amendment

7    would be futile.

8           Leave to amend an initial pleading may be allowed by leave of the Court and

9    "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182

10   (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the discretion of the trial

11   court. *Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d

12   1386, 1390 (9th Cir. 1985). In determining whether amendment is appropriate, the Court

13   considers five potential factors: (1) bad faith, (2) undue delay, (3) prejudice to the

14   opposing party, (4) futility of amendment, and (3) whether there has been previous

15   amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The

16   Court's decision is guided by the established practice of permitting amendments with

17   "extreme liberality" in order to further the policy of reaching merit-based decisions. *DCD*

18   *Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In light of this policy, the

19   nonmoving party generally bears the burden of showing why leave to amend should be

20   denied. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

21          In the proposed amended answer, NPC alleges that Plaintiffs refused to provide a

22   defense in the underlying litigation for two months subsequent to NPC's tender of

ORDER - 6

1 | defense before finally agreeing to defend under a reservation of rights, notwithstanding

2 | the timely investigation requirements of WAC 284-30-330 and WAC 284-30-370. Dkt.

3 | 26 at 16–18. Even in the absence of a duty to defend or indemnify, "where a violation of

4 | chapter 284-30 WAC is shown, the first two elements of a CPA claim are proved." *St.*

5 | *Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 133 (2008). NPC further

6 | alleges that Plaintiffs have still refused to reimburse it for a portion of the defense costs

7 | incurred while waiting for Plaintiffs to assume its defense. *Id.* at 18. "[T]he duty to

8 | defend arises not at the moment of tender, but upon the filing of a complaint alleging

9 | facts that could potentially require coverage." *Nat'l Sur. Corp. v. Immunex Corp.*, 176

10 | Wn.2d 872, 889 (2013). The Court finds that such allegations adequately allege facts that

11 | support a plausible claim. The Court has already determined that the underlying

12 | complaint implicates a duty to defend under NPC's policy with Plaintiffs. Therefore,

13 | NPC states a plausible claim that Plaintiffs have acted in bad faith and in violation of the

14 | CPA by alleging that (1) Plaintiffs have refused to reimburse costs associated with the

15 | initial defense of the underlying lawsuit, and (2) Plaintiffs unreasonably delayed in their

16 | investigation of the claim and the issuing of a defense under a reservation of rights.

17 | NPC additionally alleges that Plaintiffs have breached their duty of fairness to

18 | NPC "by seeking adjudication in this coverage suit of factual matters disputed in the

19 | underlying litigation in furtherance of its own financial interests but to the detriment of

20 | Northwest Pipe's interests." Dkt. 26 at 19. Plaintiffs argue that such a claim is futile

21 | because they have acted lawfully in seeking a declaratory judgment on coverage and the

22 | duty to defend. Dkt. 39 at 11–12. However, Washington courts have held that, "[w]hile

1    defending under a reservation of rights, an insurer acts in bad faith if it unjustly pursues a

2    declaratory judgment that it has no duty to defend and that action might prejudice its

3    insured's tort defense." *Dan Paulson Const., Inc.*, 161 Wn.2d at 918 (quotation omitted).

4    Accordingly, a declaratory action such as this one can constitute bad faith if it prejudices

5    the NPC's defense in the underlying litigation. Because Plaintiffs have failed to address

6    whether this action had the potential to prejudice NPC's defense, they have failed to

7    satisfy their burden in establishing that this proposed amendment is futile.

8         Based on the foregoing, the Court concludes that NPC's proposed amendment is

9    not futile and therefore grants NPC's motion for leave to file an amended answer.

10   **D.      Future Proceedings**

11        The Court has concluded that (1) Plaintiffs have a duty to defend NPC, and (2) if

12   the Water District prevails against NPC in the underlying litigation, Plaintiffs' duty to

13   indemnify will only extend to damages resulting from the physical injury or loss of use of

14   the circumferential welds. However, this does not completely resolve this case.

15        Because the underlying litigation is ongoing, and the underlying complaint

16   conceivably alleges damages covered by NPC's policy with Plaintiffs, it is premature for

17   the Court to enter a final order on the issue of indemnity. Additionally, future

18   circumstances may arise where it becomes absolutely clear that the underlying litigation

19   does not include a claim for damages to the circumferential welds, at which time

20   Plaintiffs would no longer owe NPC any duty to defend.

21        The Court's decision to grant NPC's motion for leave to amend its answer may

22   complicate how this case proceeds. While the above-described issues are not ready for

1    consideration, the Court sees no reason why NPC's newly asserted counterclaims should

2    not move forward. Accordingly, it appears that Plaintiffs' declaratory action and NPC's

3    extra-contractual claims may require bifurcation at some future date. However, this issue

4    is not presently before the Court, so the Court need not consider it.

5                                      **III.    ORDER**

6           Therefore, it is hereby **ORDERED** as follows:

7           1.      Plaintiffs' motion for summary judgment (Dkt. 17) is **GRANTED in part**

8    and **DENIED in part**. Plaintiffs' motion is **GRANTED** to the extent that it seeks

9    declaratory judgment that the only claims covered by the underlying litigation are claims

10   asserting property damage to the circumferential welds. Otherwise, the motion is

11   **DENIED**.

12          3.      NPC's motion for partial summary judgment (Dkt. 14) is **GRANTED**. The

13   underlying complaint contains allegations which could impose liability upon NPC within

14   the policy's coverage. Accordingly, Plaintiffs owe NPC a duty to defend in the

15   underlying litigation and Plaintiffs have failed to establish that a reasonable basis exists

16   to prorate the costs of defense.

17          4.      NPC's motion for leave to file an amended answer (Dkt. 26) is

18   **GRANTED**.

19          Dated this 20th day of July, 2017.

20

21                                              _____
                                                BENJAMIN H. SETTLE
                                                United States District Judge

22

ORDER - 9