UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>NORTHWEST PIPE COMPANY, et al.,<br><br>　　　　Defendants. | CASE NO. C17-5098 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO BIFURCATE |

This matter comes before the Court on the motion to bifurcate of Defendant Norwest Pipe Company ("NPC"). Dkt. 52. Plaintiffs Travelers Property Casualty Company of America ("Travelers") and The Phoenix Insurance Company ("Phoenix") (collectively "Plaintiffs") oppose the motion. Dkt. 57. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated below.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 7, 2015, Defendant Greater Vancouver Water District ("Water District") commenced an action against NPC in the Supreme Court of British Columbia. Dkt. 18-12. In that action, the Water District alleges that it suffered damages in the construction of a large water pipeline, referred to as the "Twin Tunnels" project, arising

from the alleged failure of circumferential welds that were being used to attach grout plugs to a large steel pipe liner. *Id.* Both the grout plugs and steel liner were manufactured and supplied to the Water District by NPC. *Id.* at 5.

On August 5, 2016, NPC tendered a claim to Plaintiffs based on this underlying lawsuit. Dkt. 18-13 at 1. On August 9, 2016, Plaintiffs acknowledged NPC's claim. *Id.*

On October 26, 2016, Plaintiffs assumed the defense of NPC under a reservation of rights, including the right "to withdraw from the defense of NPC in regard to the Underlying Lawsuit." Dkt. 18-15. Plaintiffs' reservation of rights letter highlighted potential coverage issues based on the theory that the damage alleged in the underlying litigation may not constitute "property damage" as covered by the policy. Dkt. 18-15 at 8. Additionally, Plaintiffs' reservation of rights letter stated that coverage may be precluded by any of several exclusions, including: (1) the "Your Product" exclusion, (2) the "Impaired Property" exclusion, and (3) the "Recall" exclusion. *See* Dkt. 18-15 at 8–16.

On February 8, 2017, Plaintiffs filed their complaint in this case. Dkt. 1. Plaintiffs seek a declaratory judgment that they owe no duty to defend or indemnify in the underlying dispute between NPC and the Water District. *Id.* at 21.

On March 30, 2017, NPC moved for partial summary judgment on whether Plaintiffs have a duty to defend NPC in the underlying lawsuit. Dkt. 14. On April 13, 2017, Plaintiffs moved for summary judgment. Dkt. 17. On April 20, 2017, NPC also moved for a partial stay of this case and the summary judgment proceedings on the issue of whether Plaintiffs have a duty to indemnify NPC for the damages alleged in the underlying litigation. Dkt. 21.

On May 4, 2017, NPC filed a motion for leave to amend its answer to the complaint and to assert extra-contractual counterclaims for bad faith and violations of the Washington Consumer Protection Act. Dkt. 26.

On June 22, 2017, the Court entered an order denying NPC's motion to stay the issue of indemnity. Dkt. 38. In reaching its decision to deny the requested stay, the Court stated:

> [W]hile the duty to defend is distinctly broader than the duty to indemnify, both are derivative of the same underlying concept: coverage under the applicable policy. "When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until *coverage* is settled in a declaratory action." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405 (2010), *as corrected on denial of reconsideration* (June 28, 2010) (emphasis added). Because this is just such a declaratory action, the issue before the Court is whether coverage exists under the applicable policy for the various claims in the underlying litigation. This issue is dispositive of both the duty to defend and the duty to indemnify.
> 
> Indeed, the fact that the duty to defend is implicated by the timing of this lawsuit is important to the Court's analysis, as it refines the lens through which the Court may view the issue of coverage. For instance, because the underlying litigation is unresolved, the duty to defend is ongoing and the Court's review must generally be limited to "look[ing] at the 'eight corners' of the insurance contract and the underlying complaint." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, 39 F. Supp. 3d 1149, 1156 (W.D. Wash. 2014). Nonetheless, the distinction between the duties to defend or indemnify is not so profound, by itself, to justify staying the Court's analysis of one duty while addressing the other. Contrary to the Defendants' assertions, analysis of whether the allegations in the underlying lawsuit implicate covered property damage will not prejudice them in any way. Accordingly, the motion to stay is denied.

*Id.* at 8.

On July 20, 2017, the Court entered an order granting in part and denying in part the parties' motions for summary judgment and granting NPC's motion for leave to amend. Dkt. 47. Specifically, the Court ordered as follows:

> 1. Plaintiffs' motion for summary judgment . . . is **GRANTED in part** and **DENIED in part**. Plaintiffs' motion is **GRANTED** to the extent that it seeks declaratory judgment that the only claims covered by the underlying litigation are claims asserting property damage to the circumferential welds. Otherwise, the motion is **DENIED**.
> 3. NPC's motion for partial summary judgment . . . is **GRANTED**. The underlying complaint contains allegations which could impose liability upon NPC within the policy's coverage. Accordingly, Plaintiffs owe NPC a duty to defend in the underlying litigation and Plaintiffs have failed to establish that a reasonable basis exists to prorate the costs of defense.
> 4. NPC's motion for leave to file an amended answer . . . is **GRANTED**.

*Id.* at 9.

On August 23, 2017, NPC moved to bifurcate their extra-contractual claims from the issue of coverage under the policy. Dkt. 52. Also, while NPC's motion does not expressly request a stay of Plaintiffs' declaratory action, it could conceivably be construed as implicitly requesting a stay pending the resolution of the underlying litigation. *Id.* On September 5, 2017, Plaintiffs responded in opposition. Dkt. 57. On September 8, 2017, NPC replied, clarifying that it does not seek a stay of the declaratory action. Dkt. 59

## II. DISCUSSION

NPC moves to bifurcate this case by separating its extra-contractual counterclaims from Plaintiffs' declaratory action. Dkt. 52. "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings . . . ." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)). The party seeking bifurcation bears the burden of proving that bifurcation will promote judicial economy given the facts of the case. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). The Court finds that NPC has satisfied its burden and that bifurcation is warranted.

The Court has already concluded that Plaintiffs have a duty to defend NPC against the Water District's claims in the underlying litigation based on the Water District's claims alleging damage to the circumferential welds on the Twin Tunnels project. Dkts. 38, 47. As a result, Plaintiffs' declaratory action on the issue of coverage is contingent upon the underlying litigation between NPC and the Water District. However, the Court has also noted that "future circumstances may arise where it becomes absolutely clear that the underlying litigation does not include a claim for damages to the circumferential welds, at which time Plaintiffs would no longer owe NPC any duty to defend." Dkt. 47 at 9. Accordingly, Plaintiffs' declaratory action may not proceed any further until either (1) the underlying litigation reaches a stage where it is absolutely clear that the Water District does not assert claims against NPC for damages to the circumferential welds, or (2) the underlying litigation is resolved.

On the other hand, NPC's extra-contractual claims are based on events that have already occurred, namely, Plaintiffs' conduct in seeking to deny coverage on the claims in the underlying litigation notwithstanding their duty to defend against such claims. Accordingly, NPC's counterclaims are not contingent upon concurrent parallel litigation, but are instead ready to proceed towards trial. Accordingly, the Court finds that NPC's counterclaims and Plaintiffs' declaratory action on the issue of coverage should be bifurcated. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985) (holding that bifurcation under Rule 42(b) is appropriate where, "[w]ithout the severance order, the trial of the [severable] issues would needlessly have been delayed for a substantial period.").

Also, while NPC has stated in their reply that they do not seek a stay of Plaintiffs' declaratory action, their motion to bifurcate could be read to implicitly request that the Court stay consideration of Plaintiffs' declaratory action pending an outcome of the underlying litigation. *See* Dkt. 52 at 4–5 ("Travelers' duty to indemnify cannot be tried to a jury until the Underlying Litigation is resolved. . . . Until NPC's liability in the Underlying Litigation is determined, there can be no trial on Travelers' duty to indemnify.").

Plaintiffs first argue against a stay by claiming that NPC has already requested such a stay and that the Court denied its request. Dkt. 57 at 6–7. However, NPC's present request for a stay is easily distinguished from its former motion. NPC's previous request for a stay was an attempt to partially stay summary judgment proceedings on the issue of Plaintiffs' duty to indemnify. *See* Dkt. 21. When denying the request, the Court

On the other hand, NPC's extra-contractual claims are based on events that have already occurred, namely, Plaintiffs' conduct in seeking to deny coverage on the claims in the underlying litigation notwithstanding their duty to defend against such claims. Accordingly, NPC's counterclaims are not contingent upon concurrent parallel litigation, but are instead ready to proceed towards trial. Accordingly, the Court finds that NPC's counterclaims and Plaintiffs' declaratory action on the issue of coverage should be bifurcated. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985) (holding that bifurcation under Rule 42(b) is appropriate where, "[w]ithout the severance order, the trial of the [severable] issues would needlessly have been delayed for a substantial period.").

Also, while NPC has stated in their reply that they do not seek a stay of Plaintiffs' declaratory action, their motion to bifurcate could be read to implicitly request that the Court stay consideration of Plaintiffs' declaratory action pending an outcome of the underlying litigation. *See* Dkt. 52 at 4–5 ("Travelers' duty to indemnify cannot be tried to a jury until the Underlying Litigation is resolved. . . . Until NPC's liability in the Underlying Litigation is determined, there can be no trial on Travelers' duty to indemnify.").

Plaintiffs first argue against a stay by claiming that NPC has already requested such a stay and that the Court denied its request. Dkt. 57 at 6–7. However, NPC's present request for a stay is easily distinguished from its former motion. NPC's previous request for a stay was an attempt to partially stay summary judgment proceedings on the issue of Plaintiffs' duty to indemnify. *See* Dkt. 21. When denying the request, the Court

emphasized that the duty to defend and the duty to indemnify, while distinct in their breadth and application, are both outgrowths of the underlying legal question of coverage under the applicable insurance policy. Dkt. 38 at 7–8. If the previous request was granted, the Court would have been forced to bifurcate its consideration of Plaintiffs' duties to defend and indemnify—issues that were both based on identical underlying questions of law presented in the summary judgment motion. Accordingly, under the facts of the case and the particular arguments presented in Plaintiffs' summary judgment motion, it was inappropriate to stay the summary judgment proceedings in part on the duty to indemnify while proceeding in part on the question of Plaintiffs' duty to defend. However, the present motion does not present the same problem of severing issues that are based on the identical underlying questions regarding the policy's breadth of coverage. Instead, NPC seeks to bifurcate extra-contractual counterclaims that are ready to proceed towards trial from a declaratory action that is dependent upon the slow progression of the underlying litigation.

Plaintiffs also argue that a stay would unduly prejudice them if granted. The Court agrees and will not stay the proceedings to the extent that such a stay might prevent Plaintiffs from conducting discovery or otherwise advancing their declaratory action while concurrently defending against NPC's counterclaims. As noted in the Court's previous order, "future circumstances may arise where it becomes absolutely clear that the underlying litigation does not include a claim for damages to the circumferential welds, at which time Plaintiffs would no longer owe NPC any duty to defend." Dkt. 47 at 8. At such a time, it would be appropriate for Plaintiff to file a renewed motion for

summary judgment. It may also be appropriate for Plaintiffs to seek discovery related to their declaratory action—mindful, of course, that pursuing such discovery could expose them to further potential liability for extra-contractual claims. Notably, NPC seems to likewise agree. *See* Dkt. 59.

As the case presently stands, it is clear that Plaintiffs' declaratory action can advance no further than it already has pending the development of the Water District's claims in the underlying litigation. Plaintiffs will be required to defend NPC in the underlying litigation so long as the Water District's claims can be construed to conceivably assert claims for damage to the circumferential welds. Meanwhile, NPC's extra-contractual counterclaims are ready to proceed towards a set trial date. Accordingly, the Court will grant NPC's motion to bifurcate as set forth in the order below.

### III. ORDER

Therefore, it is hereby **ORDERED** that NPC's motion (Dkt. 52) is **GRANTED in part** and **DENIED in part** as follows:

1. NPC's motion to bifurcate its extra-contractual claims from Plaintiffs' declaratory action is **GRANTED**. The set trial date of January 22, 2019, and the corresponding case schedule (excluding the deadlines for amended pleadings and joinder of parties) shall be limited to NPC's extra-contractual counterclaims. *See* Dkt. 56. Should the underlying litigation develop as to enable Plaintiffs to proceed further on their declaratory action concurrent with NPC's counterclaims, then Plaintiffs may seek to consolidate the declaratory action and NPC's counterclaims at that time.

2. To the extent NPC's motion might be construed as a request to stay Plaintiffs' declaratory action pending the ultimate outcome of the underlying litigation between NPC and the Water District, the motion is **DENIED**.

Dated this 20th day of September, 2017.

BENJAMIN H. SETTLE
United States District Judge