The Hon. Benjamin H. Settle

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a foreign
insurance company; THE PHOENIX
INSURANCE COMPANY, a foreign
insurance company,

                              Plaintiffs,

     v.

NORTHWEST PIPE COMPANY, a
Washington corporation; and GREATER
VANCOUVER WATER DISTRICT, a
British Columbian statutory corporation,

                             Defendants.

No. 3:17-cv-05098-BHS

**TRAVELERS' MOTION FOR
SUMMARY JUDGMENT
REGARDING NORTHWEST PIPE'S
EXTRA-CONTRACTUAL CLAIMS**

**Noted on Motion Calendar:
November 23, 2018**

ORAL ARGUMENT REQUESTED

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 0**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Travelers submits the following Motion for Summary Judgment Regarding Northwest Pipe Company's, (hereinafter "NWP"), Extra-Contractual Claims.

## I.      INTRODUCTION

This is an insurance coverage action arising from an underlying litigation in British Columbia, Canada. NWP, (an Oregon corporation), was sued by the Greater Vancouver Water District. More than a year after the lawsuit was filed against NWP, NWP tendered a claim for defense and indemnity coverage under its general liability policy issued by Travelers in Washington. Travelers promptly agreed to defend NWP subject to an ROR. Travelers agreed to retain NWP's selected Canadian defense counsel. Travelers has paid all fees and costs associated with the defense of the Underlying Canadian Lawsuit through NWP's selected Canadian defense counsel. Travelers never denied any claim presented to it. Travelers then filed a Complaint for Declaratory Judgment. Seven months after Travelers agreed to defend NWP and three months after Travelers filed this Declaratory Judgment Action, NWP asserted for the first time extra-contractual claims. NWP is asserting bad faith claims based on the following:

1. Travelers' alleged denial of payment for fees and costs submitted by NWP for its corporate counsel.
2. Travelers' alleged delay in investigating coverage and in agreeing to defend NWP.[1]

Amended Counterclaim, Dkt. 48. For the reasons set forth below, these claims are without merit.

## II.      STATEMENT OF FACTS

### A.    Factual History of Travelers' Investigation of the Subject Claim

- This litigation results from a lawsuit filed against NWP in British Colombia, Canada. Dkt. at 18-12. The suit was filed on August 7, 2015. *Id*. NWP is a publicly traded Oregon corporation with total year end revenues for the past three years in the following amounts of $173,160,000

---

[1]   NWP also previously asserted a claim that Travelers acted in bad faith by not splitting the coverage file from the defense file. Based upon NWP's own testimony however, NWP has dismissed this claim. Dkt. at 101.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS - 1**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

in 2015, $$149,387,000 in 2016, and $132,780,000 in 2017. **Exhibit F** to the Declaration of Thomas Lether.

- NWP was served with the Amended Notice of Civil Claim against NWP on July 27, 2016. Dkt. at 18-12. On July 28, 2016, NWP tendered the underlying lawsuit to Travelers through its agent. NWP's agent incorrectly sent the claim to a Travelers mail box for Travelers' Southwest claims department. The claim was then re-routed to the correct claims office and a file was officially set up on August 5, 2016 and assigned to Dana Falstad. See Declaration of Dana Falstad.

- In addition to a construction file being set up by Ms. Falstad, a separate file was also set up in Canada to address the Canadian specific defense issues in the claim. In this regard, Mr. John D'Arcy who is a Canadian adjuster was assigned to work on the Canadian defense file. This Canadian defense file was set up on or about August 5, 2016. Falstad Decl.

- On the same day, six business days after receiving the tender, Travelers spoke directly with NWP about its claim. Falstad Decl. On August 9, 2016, Travelers acknowledged receipt of this claim. **Exhibit 2** to Falstad Decl.

- On August 11, 2016, Ms. Falstad asked NWP whether a response to the Canadian Complaint had been filed. In response, NWP advised Travelers that it has retained Canadian attorney Don Smith to represent NWP in the Canadian action. NWP also indicated that it had separate Oregon counsel. See Falstad Decl. and email attached thereto as **Exhibit 3**. In fact, a review of Canadian counsel, Don Smith's billing establishes that he began billing NWP as of August 2, 2016. This was four business days after NWP was served with the Amended Notice of Claim. See SHK legal bills attached as **Exhibit 4** to Falstad Decl.

- Ms. Falstad attempted to obtain information regarding Mr. Sandmire and the Ater Wynne firm

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS** - 2
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

by contacting two of Travelers' highly experienced Pacific Northwest claims representatives who specialize in construction litigation and also by reviewing the Ater Wynne webpage. She determined that Ater Wynne did not appear to be a construction firm and was not licensed in Canada. In fact, Ater Wynne has acted as personal counsel in other claims NWP has submitted to Travelers. Falstad Decl.

- At no point in any communication did NWP ever advise Travelers that Ater Wynne was actively defending NWP. Moreover, at no time in any communication did NWP ever ask for reimbursement of any Ater Wynne bills. At no point in any communication did NWP ask Travelers to consider having Ater Wynne defend NWP. NWP never made any claim for reimbursement based upon the supplementary payment provisions of the policy. Falstad Decl.

- NWP admits that it did not ask Travelers to consider payment of the Ater Wynne bills at that time. When asked directly about this issue, NWP's FRCP 30(b)(6) Representative testified:

> I am not aware of that. I don't think that's something that would have occurred to us at this point.

Deposition of Ross Michael Borden, **Exhibit G** to Lether Decl., p. 71, lines 16-18

- As a result, there never was a "claim" submitted by NWP for the Ater Wynne fees. Falstad Decl.

- Ms. Falstad concluded that Mr. Smith and not Ater Wynne was defending the Canadian suit. This made sense due to the fact that Mr. Smith and his firm were licensed in Canada and could defend a Canadian action. The Ater Wynne firm in Portland is not a Canadian law firm. Rather, Ater Wynne is NWP's personal, corporate counsel for NWP. Falstad Decl.

- Due to the fact that the policy was issued in Washington to an Oregon insured and involved a suit in Canada, Travelers consulted with Canadian counsel to determine if Canadian law or Washington/Oregon law should apply to the coverage issues in the claim. Specifically,

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 3
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

Travelers consulted with counsel Mark Lichty in Toronto, Ontario. Falstad Decl.

- Travelers also separately reviewed the jurisdictional issues with local coverage counsel, Lether & Associates. Based upon the recommendations of counsel, and due to the fact that Washington law was more favorable than Canadian or Oregon law in regard to the duty to defend, Travelers determined that it was appropriate to apply Washington law to the coverage issues presented by this claim. Falstad Decl.

- Thereafter, Travelers reviewed the operative pleadings to determine whether there was a duty to defend. Travelers also reviewed multiple policies which were potentially applicable to this claim. At no time did Travelers review any extrinsic evidence for the purpose of denying the duty to defend NWP. Falstad Decl.  Travelers based its review upon the underlying Notice of Civil Claim, which was different from a normal Washington Complaint. Moreover, the potential coverage issues presented in the claim were complicated and involved a number of potential coverage issues. These issues included whether there was resulting third party property damage, whether there was a covered occurrence, whether your product or your work exclusion applied, whether the recall exclusion applied, whether the contractual liability exclusion applied, whether the impaired property exclusion applied, potential late tender issues, which policies were potentially triggered, etc. Falstad Decl.

- Travelers was also obtaining information regarding the exposures and liabilities in the Canadian action. This is a normal part of the claims process. This information, although extrinsic to the claim, was also reviewed to see if it supported a claim for coverage and a defense obligation. The amount of this information was significant. The information included excess or umbrella policies, and reviewing the underlying pleadings and the significant amount of documentation that came from the job file. These job file documents included the

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS - 4
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1    job contracts and subcontracts, correspondence between the underlying parties, and thousands

2    of pages of additional documents. Falstad Decl. As NWP's own bad faith expert testified,

3    there were thousands of documents that came in pursuant to Travelers' request for the job file

4    documentation and contracts. See Deposition of Smith, **Exhibit H** to Lether Decl.

5    • On September 8, 2016, NWP asked for the status of Travelers' coverage position letter (also

6    referred to as a "reservation of rights" or "ROR"). NWP was advised that the letter would be

7    provided shortly. Falstad Decl. and email chain attached thereto as Exhibit 4. Travelers also

8    provided a status on its coverage investigation to NWP's agent on September 8, 2016. NWP

9    never made any other inquiries to Travelers regarding the status of the claim. Falstad Decl.

10   • On September 19, 2018, Travelers retained Lether & Associates to provide legal advice

11   concerning Travelers' legal obligation involving the duty to defend and to assist in drafting

12   the ROR letter. Once again, this was due to the complexities of the coverage issues presented.

13   In addition, it was necessary for Travelers to review its preliminary coverage decision

14   internally due to potential exposures in the case and complexity of the issues involved. Falstad

15   Decl.

16   • As of September 26, 2016, Travelers made an initial determination that the Underlying

17   Complaint potentially triggered a duty to defend. This was 41 business days from the date of

18   tender and five (5) business days after retaining coverage counsel. Falstad Decl.

19   • Based upon this conclusion, Travelers discussed with Mr. Don Smith the defense of this

20   claim. Specifically, Mr. D'Arcy conducted a conference call with Mr. Smith on September 29,

21   2016. Don Smith Billing, **Exhibit 4** to Falstad Decl.

22   • Travelers then confirmed the representation with Mr. Smith directly. This was confirmed in an

23   email exchange between Ms. Falstad and Mr. Smith on October 4, 2016. This was 47 business

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**REGARDING EXTRA-CONTRACTUAL CLAIMS** - 5
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

days from the tender. Email chain, **Exhibit 5** to Falstad Decl. In fact, Mr. Smith directly billed Travelers and never billed NWP. Once again, all fees and costs billed through Mr. Smith were paid. Falstad Decl.

- As a result, by September 29 or October 4 at the latest, NWP and Mr. Smith were aware that Travelers was agreeing to accept the defense of the Canadian action and that Mr. Smith would be assigned as counsel. **Exhibit G** to Lether Dec, p. 136. NWP expressed no concerns about Travelers decision to assign Mr. Smith as defense counsel. Id at 16-20.

- On October 14, 2016, Lether & Associates provided a proposed ROR letter to Travelers. The letter was 23 pages long and was a comprehensive and detailed letter addressing multiple factual and coverage issues. Lether Decl. Travelers then thoroughly reviewed this letter. On October 26, 2016 Travelers issued its ROR letter. In this letter Travelers agreed to defend the insured under an express ROR. This memorialized Travelers' position previously explained to Mr. Smith. Specifically, that Travelers would defend the case and agreed to utilize the defense firm that NWP had previously retained. **Exhibit 7** to Falstad Decl.

- The ROR letter expressly invited NWP to provide any information that it may have had that had any bearing on the issues addressed in the letter.

  To the extent Northwest Pipe has further information that clarifies any information in this letter or that supports your claim, Travelers requests that you produce any information that will contribute to the review above and which demonstrates coverage under the terms of the Policies.

  **Exhibit 7** to Falstad Decl. at 18-15, p. 21.

- In regard to the Ater Wynne bills, Travelers' ROR letter stated the following:

  Travelers is aware that Donald Smith of SHK Law Corporation has been retained to handle the defense of Northwest Pipe in the Underlying Lawsuit. Travelers will agree to utilize Mr. Smith as assigned counsel of Northwest Pipe given his current involvement in the defense of this matter, unless Northwest Pipe requires or requests separate counsel. Please advise the undersigned immediately if Northwest Pipe would like to request

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 6
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

different counsel. Assuming there is no such request, Travelers will work with Mr. Smith . . . to arrange for the payment of any future defense costs or fees subject to an appropriate and reasonable allocation.

[. . .]

If you have any questions regarding this matter or the issues discussed in this letter, please do not hesitate to contact us at your earliest convenience.

**Exhibit 7** to Falstad Decl.

- Travelers did not receive any objection from NWP regarding the ROR letter. In fact, there was never a response or any questions asked by NWP about the ROR. NWP's 30(b)(6) witness testified:

    Q. At any point in time did Northwest Pipe ever set forth any questions to Travelers that were not responded to?
    A. Not to my knowledge.
    Q. Was there any written communication, letters that Northwest Pipe – emails that Northwest Pipe sent to Travelers that were not responded to?
    A. Not to my knowledge.
    Q. And again, Northwest Pipe never inquired further from Ms. Falstad as to the status of the ROR letter other than that one email?
    A. No.
    Q. And didn't respond at all to the reservation of rights letter once it got it?
    A. That's correct.

**Exhibit G** to Lether Dec., p. 134, line 8-22.

- Thereafter, NWP never provided any new information about the work performed by Ater Wynne, nor did it ever provide the Ater Wynne legal bills for Travelers' review.

**B.      Procedural History**

- Travelers initiated this Declaratory Relief Action on February 8, 2017. (Dkt. at 1). On March 24, 2017, NWP filed an Answer to Travelers' Complaint for Declaratory Relief and asserted a Counterclaim for Declaratory Judgment in its favor on the issue of coverage. NWP did not address coverage by estoppel as a remedy in its initial Answer and Counterclaims, nor did it assert any extra-contractual claims. (Dkt at 13).

- A series of motions then ensued, including Cross-Motions for Summary Judgment on the

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS** - 7
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

coverage issues in the claim. NWP did not raise the issue of coverage by estoppel argument in its coverage motion of in response to Travelers' motion. Dkt. 14 and Dkt. 17. On July 20, 2017 the Court granted in part Travelers' Motion for Summary Judgment in regard to coverage and found that there was no coverage for nearly every aspect of the claims asserted against NWP in the Underlying Lawsuit. The Court found that the impaired property exclusion expressly applied and precluded coverage for anything other than potential third-party property damage involving the pipeline welds. Dkt. at 47.

C.    **Post Litigation Submission of Ater Wynne Bills.**

The first time that NWP asked for Travelers to pay for the Ater Wynne legal bills was when NWP filed their Motion for Leave to Amend its Answer and Counterclaim.[2] This motion and proposed pleading was filed was filed on May 4, 2017. Dkt. 26. By email of July 21, 2017, NWP offered to provide the legal bills as, "part of an ER 408 settlement offer." **Exhibit 8** to Falstad Decl. Following this Court granting its motion, NWP filed its Amended Answer and Counterclaims on July 24, 2017. (Dkt at 48). (Dkt at 48, pgs. 10-11). In response to the ER 408 email and amended counter-claim, on July 27, 2017, (three days after the amended counterclaim was filed), Travelers wrote to NWP explaining its understanding of the Ater Wynne issue and asking for copies of the legal bills for review. **Exhibit 9** to Falstad Decl.

There was no response.  As a result, in a letter dated August 17, 2017, Travelers once again asked for the legal bills. **Exhibit 10** to Falstad Decl. By letter of August 21, 2017, NWP finally responded to Travelers' requests, indicating that it would not provide copies of the Ater Wynne bills unless a protective order were entered.  **Exhibit 11** to Falstad Decl.

---

[2] NWP has argued at various times that its initial counter-claim, filed on March 24, 2017,  alleged claim for failure to pay the Ater Wynne fees. The Ater Wynne fees are not addressed anywhere in this pleading. This original counterclaim simply alleged generically that defense fees were owed. Clearly, as of that date NWP was aware of the Ater Wynne fees and did not expressly set forth the issue in their initial filing. See Dkt. 13.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS - 8**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

During that time, the legal bills of Don Smith, defense counsel in the Underlying Lawsuit were being submitted to Travelers' claims personnel on a monthly basis without a protective order in place. Once again, these bills were being processed and paid. Falstad Decl.

This need for a protective order was <u>solely</u> at the request of NWP. **Exhibit G** at p. 76-79 to Lether Decl. Thereafter, Travelers and NWP negotiated the terms of the proposed Stipulated Protective Order. The order was entered by the Court on December 12, 2017. Dkt. at 63. On December 18, 2017, NWP finally forwarded copies of the Ater Wynne legal bills. These bills were received on December 20, 2017. **Exhibit 12** to Falstad Decl.

Travelers thoroughly reviewed the Ater Wynne bills and, despite significant concerns, agreed to pay the bills in their entirety. This agreement was set forth in Travelers' letter of January 11, 2018, 14 business days after receipt of the bills. **Exhibit 13** to Falstad Decl. The payment of the Ater Wynne bills was thereafter issued by Travelers on January 29, 2018. Falstad Decl. As set forth below, Travelers has subsequently paid for the full interest claimed by NWP on these fees. See **Exhibit 14** to Falstad Decl.

**E.**    **Factual Information Provided Through Discovery**

On March 1, 2018, Travelers issued its first set of discovery to NWP. **Exhibit A** to Lether Decl. NWP refused to respond claiming that it was unable to state the basis for its claims until it received the complete Travelers' claims file. **Exhibit B** to Lether Decl. After multiple discovery conferences and supplements to Travelers' privilege log and production, Travelers renewed its request for NWP's responses in a letter sent to NWP on May 15, 2018. **Exhibit C** to Lether Decl. Travelers further reiterated its request in a letter dated August 14, 2018. **Exhibit D** to Lether Decl.

On August 31, 2018, Travelers finally received NWP's discovery responses. **Exhibit Q** to Lether Decl. In these responses, the <u>only</u> allegations involving bad faith are the alleged delay in

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 9
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1  regard to the ROR letter and issue of the Ater Wynne bills. **Exhibit E**. The only claimed damages

2  are interest on the Ater Wynne legal fees and the fees that NWP has paid its claims handling

3  expert.  **Exhibit E**, pp. 11-12.

4     To follow up on these discovery responses Travelers conducted the 30(b)(6) deposition of

5  NWP on October 5, 2018. In that deposition the 30(b)(6) deponent of NWP confirmed the only

6  claims against Travelers arose from alleged delay in issuing the ROR and Travelers' initial

7  position on the Ater Wynne bills. **Exhibit G** to Lether Decl., p. 147, 16-25; p.148, 1-12. In regard

8  to any damages, NWP's 30(b)(6) deponent confirmed the only damages were for interest and

9  litigation costs. **Exhibit G** to Lether Decl., p. 148, 20-25. In regard to interest calculation, NWP

10  30(b)(6) deponent confirmed the interest amount was $5,200. **Exhibit G** to Lether Decl., p. 151,

11  6-8.

12     NWP is also bringing a claim under the Consumer Protection Act. The NWP (30)(b)(6)

13  deponent confirmed there is no other basis for a CPA claim. **Exhibit G** to Lether Decl., p. 155, 7-

14  22: p.156, 1-5.

## III.     LEGAL ARGUMENT

**A.     Northwest Pipe Cannot Establish the Necessary Elements of a Bad Faith Claim**

### *1. Washington Law Controlling Bad Faith Claims*

18     A claim for insurance bad faith under Washington law is recognized as a tort. *Safeco Ins.*

19  *Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499, 503 (1992). An essential element of any tort

20  claim is that the wrongful act caused harm. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548,

21  368 P.2d 897 (1962). Harm is an essential element of an action for bad faith handling of an

22  insurance claim. *Cf. Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 627, 117 P.2d 644

23  (1941). In order for a party to present a claim for bad faith, the party must establish all of the

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 10**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

following essential elements:

> 1) The existence of a duty;
> 2) breach of that duty; and
> 3) damages that were proximately caused by the breach of that duty.

The insured has the burden of proof as to each of these elements. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130, 196 P.3d 664 (2008). In order to establish a claim for insurance bad faith, an insured must be found to have acted in an *unreasonable, frivolous, or unfounded manner. St. Paul Fire & Marine Ins. Co. supra.* (Emphasis added). As long as the insurer has a reasonable basis for its claims decision, there is no bad faith. *Dombrosky v. FIE Ins. Co.*, 84 Wn. App. 245, 982 P.2d 1127; *Miller v. Indiana Ins. Co.*, 31 Wn. App. 475, 479, 642 P.2d 769 (1982); *Transcontinental Ins. Co. v. Washington Public Utilities District*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988). *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499, 503 (1992).

An insurer that has a reasonable basis for withholding payment under a policy cannot be said, as a matter of law, to be acting in bad faith. Washington Courts have stated the following:

> Bad faith requires a showing of frivolous and unfounded denial of benefits. Indiana denied coverage based on a reasonable interpretation of the policy; this was not bad faith as a matter of law…The mere denial of benefits due to a debatable question of coverage is insufficient.

*Miller v. Indiana Ins. Co.*, at 479. Further, the Court of Appeals has held as follows:

> Our courts have rejected attempts to base bad faith and CPA claims on legal arguments when, as here, there is no showing of bad faith, there is a debatable question regarding coverage for the loss, and the denial of coverage is based on a reasonable interpretation of the insurance policy.

*Capelouto v. Valley Forge Ins. Co.,* 98 Wn. App. 7, 22, 990 P.2d 414 (1999) (internal citations omitted). In addressing reasonableness under the WAC's, the *Keller* Court stated:

> For the above reasons, we agree with the *Starczewski* court that "an incorrect denial of coverage does not constitute an unfair trade practice if the insurer had 'reasonable justification' for denying coverage."

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 11
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

*Keller v. Allstate Insurance Co.*, 81 Wn. App. 624, 634 (1996) (internal cites omitted).

The Washington Courts have found that whether insurers' conduct is unreasonable can be determined a matter of law. The Washington Courts have held that summary judgment is appropriate where an insured fails to establish evidence sufficient to raise a genuine issue of material fact as to whether the conduct of the insurer was unreasonable, frivolous, or unfounded. *See Cardenas v. Navigators Ins. Co.*, 2011 U.S. Dist. LEXIS 145194 (W.D. Wash. 2011).

The Court decision in *Cardenas v. Navigators Ins. Co.* is directly on point. In that matter Navigators issued a liability policy. The insured's allegation in that case was that Navigators was liable for delay in defending Cardenas. *Cardenas* at 14. Cardenas argued that the claim was tendered February 23, 2010. Navigators issued an ROR letter on May 18, 2011, <u>208 days after the tender</u>. The Court noted that Navigators acknowledged the claim within four days after the receipt of the tender. The Court found as a matter of law that the amount of time it took for Navigators to respond and issue an ROR was reasonable. Judge Bryan dismissed Cardenas' extra contractual claims including its claim for insurance bad faith. The Court expressly held:

> . . It is undisputed here that Navigators assigned defense counsel to defend Cardenas under a reservation of rights on May 18, 2011.

*Cardenas*, at 21.

As the Court pointed out:

> Violations, if any, of the 10 and 30 day time periods for acknowledging a claim and completing an investigation, are simple technical violations and standing alone, do not evidence any unreasonable conduct on the part of Navigators promptly responding to the tender.

*Cardenas*, at 16.

In *Trofimovich v. Progressive Direct Insurance Company,* Progressive initially denied coverage due to the conclusion that the vehicle was being utilized by the insured on a for hire

basis. After the denial of the claim, the insured provided additional information regarding the use of the vehicle. Based upon this information Progressive reconsidered its coverage position and extended coverage. The insured expressly argued that Progressive acted in bad faith based upon a theory that Progressive should have conducted a more thorough investigation of the coverage issues before the initial denial of the claim. Judge Coughenour rejected this argument and granted Progressive's Motion for Summary Judgment finding that Progressive acted reasonably as a matter of law. *Trofimovich v. Progressive Direct Ins. Co*., 2017 U.S. Dist. LEXIS 125328, 2017 WL 3424980. In other words, the Washington courts do recognize that an insurer's decision to extend coverage for a claim after an initial denial based on new evidence is reasonable.

### 2. *Travelers Did Not Deny Any Aspect of NWP's Presented Defense Cost Expenses*

Travelers was never presented with a claim for the Ater Wynne fees until it filed its Amended Counter-claim in this action. At no time did NWP ever ask Travelers to issue payment for any Ater Wynne fees. To the contrary NWP advised Travelers within days of the claim being tendered that Don Smith – the Canadian Attorney – was defending the Canadian action. In response, Travelers agreed to pay for Mr. Smith's defense fees and costs. Travelers has paid the full amount of all defense fees and costs incurred through that firm. Moreover, Don Smith was actively defending NWP within four 4 days of the suit being served. NWP was <u>never</u> without a defense.

NWP never contacted Travelers. NWP never raised any issue in regard to the Ater Wynne fees in response to the ROR letter. Under the subject policy Travelers is solely obligated to pay for the defense of suit. In this regard the policy provides as follows:

> We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policy of insurance attached as **Exhibit 1** do Falstad Decl. at p. 4.

18. "Suit" means a civil proceeding . . .

Policy of insurance attached as **Exhibit 1** do Falstad Decl. at p. 6.

There is no requirement under the policy for Travelers to pay for the insured's personal counsel in addition to defense counsel. The policy only requires Travelers to defend a "suit" – which is the Canadian action Travelers defended. The only other potential coverage is under supplementary payments which is not applicable here for two reasons. Travelers never requested Ater Wynne's assistance and NWP <u>never</u> submitted a supplemental payment claim. See Falstad Decl.

The California Courts have looked at this issue in the context of requests for independent *Cumis* counsel. However, even in states where – unlike Washington – there is a right to independent counsel, that right only is triggered where there is an actual conflict of interest between the insurer and insured in the defense of the underlying lawsuit. *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1105-1106, 111 Cal. Rptr. 2d 181, 189-190, 2001 Cal. App. LEXIS 669, *23-24, 2001 Cal. Daily Op. Service 7398, 2001 Daily Journal DAR 9105; *Foremost Ins. Co. v. Wilks*, 206 Cal. App. 3d 251, 260, 253 Cal. Rptr. 596, 601, 1988 Cal. App. LEXIS 1109, *16-17.

Washington law expressly allows liability insurers to select counsel for the insured. *See Kruger-Willis v. Hoffenburg*, 198 Wn. App. 408, 416, 393 P.3d 844, 848, (2017) *citing Johnson v. Cont'l Cas. Co.*, 57 Wn. App. 359, 362-63, 788 P.2d 598 (1990). Washington does not follow a *Cumis* counsel type rule as California, Alaska, or certain other jurisdictions. The right to choose counsel is left to Travelers. *Id.* Moreover, a number of courts, including the California Federal Courts in the context of *Cumis* counsel, have held that an insurer does not have to pay for the insured's personal counsel in addition to the separately retained and assigned defense firm. *See Federal Insurance Company v. MBL, Inc.,* 219, Cal. App. 4th 29 (2013).

Moreover, under the policy of insurance the insured has an obligation to cooperate in the defense of a claim. In this regard the policy provides as follows:

2. Duties in the Event of Occurrence, Offense, Claim or Suit
   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . .
      [. . .]
   b. If a claim is made or "suit" is brought against any insured, you must:
      (1) Immediately record the specifics of the claim or "suit' and the date received; and
      (2) Notify us as soon as practicable.
      [. . .]
   c. You and any other involved insured must:
      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
      (2) Authorize us to obtain records and other information;
      [. . .]
   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**Exhibit 1** to Falstad Decl., at pp. 10-11.

Insureds are obligated to provide information to defense counsel and to Travelers. This includes records, job files, copies of policies, and other materials. All the Ater Wynne firm did was assist NWP in complying with NWP's obligations under the policy. NWP's 30(b)(6) representative testified that all that Ater Wynne did was place a litigation hold on records, provide record information to Travelers and Mr. Don Smith, locate and vet Mr. Smith as a potential defense counsel. Most importantly the Ater Wynne firm never conducted any actual activities in regard to defending the insured. When asked whether Ater Wynne filed any pleadings, conducted any discovery, attended any hearings or conducted any depositions, NWP admitted, "[n]ot to my Knowledge." **Exhibit G** to Lether Dec., p.66, 21-25; p 67, 1-4. Falstad Decl.

During the time leading up to the issuance of the ROR, there were no outstanding issues occurring in the underlying litigation. There were no pending motions, discovery requests, depositions, etc. Falstad Dec. Once again, Mr. Smith was retained almost immediately after the

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 15
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

suit was served. As a result, there was no conceivable harm which could have occurred to NWP during the time period Travelers was reviewing the coverage issues.

The above policy language also expressly prohibits coverage for expenses that an insured voluntarily assumes. The policy provides:

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

**Exhibit 1** to Falstad Decl., at p. 1.

In this case that is precisely what NWP did. NWP voluntarily, and without Travelers' request, retained its own corporate counsel. The Ater Wynne fees were raised for the first time in NWP's Motion for Leave to Amend the Complaint to assert extra contractual claims. This attorney fee claim was simply manufactured at that point to support a basis to amend the complaint. Regardless, Travelers requested the Ater Wynne fees immediately after the Court ruled on the Motion to Amend. NWP then delayed a total of 97 business days before it actually provided the bills. Thereafter within 40 days total and only 26 business days of receiving the bills, Travelers paid the full amount of the Ater Wynne defense costs. After confirming what NWP was actually requesting in interest on the Ater Wynne fees, Travelers paid the full amount of the interest. See below discussion. Travelers contends that any action taken in regard to the fee issue was reasonable. See also Decl. of William Hight and expert reports attached thereto as **Exhibits B–D.**

### 3. *Travelers' Investigation of the Claim was Timely*

Travelers acted reasonably in the investigation of NWP's claim. Travelers did not violate its enhanced obligation of fairness towards NWP by placing its own interests above NWP. Rather, Travelers conducted a thorough and prompt investigation into the circumstances surrounding a claim for benefits under an insurance policy and made a decision to defend NWP under an ROR.

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS - 16**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

WAC § 284-30-370 requires every insurer to complete investigation of a claim within 30 days after notification of claim, <u>unless such investigation cannot reasonably be completed within such time</u>. WAC 284-30-370, *emphasis added*. Travelers promptly acknowledged NWP's claim upon receipt and commenced its investigation. NWP's claim involved choice of law and jurisdictional issues. In addition, the coverage aspects of NWP's claim are highly complicated and required Travelers to coordinate among representatives in both Canada and Washington. Travelers engaged claims representatives in Canada and Washington to combine their efforts to fully investigate the claim. In addition, Travelers retained coverage counsel in both jurisdictions to Review the specific choice of law and jurisdictional issues.

Travelers also needed to review the actual notice of claim (the underlining complaint) and all applicable policies of insurance to analyze the duty to defend. As the court is aware the coverage issues presented in this matter were complicated. Falstad Decl. Moreover, it was not simply a process of reviewing the policy and the underlying action. Washington law requires a liability insurer to conduct a thorough investigation of coverage. This includes requiring the liability insurer to review extrinsic evidence in an effort to potentially find a duty to defend. See *Woo v. Fireman's Fund Ins. Co*., 161 Wn.2d 43, 53, 164 P.3d 454, 459, 2007 Wash. LEXIS 555, *10. As a result of this duty Ms. Falstad did review extrinsic evidence solely for the purpose of supporting a duty to defend. The extrinsic evidence that she reviewed was voluminous and included the underlying contract, job file information, and other materials involving the underlying claim. As specified above, the information included reviewing excess or umbrella coverages and reviewing the underlying pleadings and the significant amount of documentation that came from requesting and reviewing the job file documentation including the job contracts, which consisted of numerous documents and thousands of pages of information. See Decl. of

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 17
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1  Falstad.

2     The argument that al Travelers needed to do was look at the policy and at the notice of the

3  claim is an over simplification of the investigatory process. In addition to these steps Travelers

4  undertook the appropriate action in retaining coverage counsel to review coverage issues.

5     Finally, given the exposures in the claim and the complexities involved, the claims decision

6  had to be fully reviewed, discussed, and approved by management. In conclusion the claims

7  investigation constituted a process which reasonably took more than 30 days.

8          **4.     *Northwest Pipe Cannot Establish any Evidence of Damages or Proximate Cause***

9     NWP cannot establish proximate cause and actual damages.  In order to establish a cause of

10  action sounding in the tort of bad faith, NWP is required to establish that they suffered ***actual***

11  ***damage*** proximately caused by the alleged unreasonable, frivolous or unfounded acts.   *See*

12  *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d 322, 329, 2002 Wash. LEXIS 53, *23,

13  32 ELR 20476.

14     NWP but must present actual evidence supporting a claim that they were harmed by the acts

15  or omissions of Travelers. *Baldwin v. Silver,* 165 Wn. App. 463 (2011).  The *Baldwin* court

16  affirmed the dismissal of extra-contractual claims, specifically finding that the insured's self-

17  serving statements were insufficient to defeat summary judgment. *Baldwin*, 165 Wn. App. at 477

18  (2011). As in *Baldwin*, NWP's only statements in support of their extra-contractual damages

19  claims are general, conclusory statements offered in response to Travelers' letters and discovery

20  requests. NWP has not presented any evidence in support of those statements.

21     The only injury or harm identified by NWP in either discovery and initial disclosures were

22  for interest calculated at $5,196.33 and the cost for NWP's bad faith expert in the amount of

23  $5,800. The cost for the expert is not caused by Travelers alleged conduct. These are litigation

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**REGARDING EXTRA-CONTRACTUAL CLAIMS - 18**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1    costs which are not an actual injury caused by any bad faith. In regard to interest, NWP's actual

2    discovery answers contained two different interest calculations. NWP's 30(b)(6) witness on

3    damages confirmed that the total amount being claimed was a $5,196 figure. Travelers has now

4    issued payment for this calculated amount. **Exhibit 15** to Falstad Decl.

5         In summary, once NWP clearly made a claim for the Ater Wynne fees, Travelers

6    requested those legal billings and did not receive them for several months. Travelers received the

7    legal billings for review on December 20, 2017. Travelers made the decision to pay the bills in

8    full on January 11, 2018 and they were paid on January 29, 2018. Travelers and has now paid the

9    interest on those fees.  Beyond this, no other damages have been shown by NWP.

10   **B.    The Coverage by Estoppel Remedy Is Not Implicated by the Allegations in this Matter**

11

12        NWP argues that it is not required to establish proximate cause and damages elements of its

13   bad faith claim because it is entitled to coverage by estoppel.  This argument is without merit. The

14   Court should find that NWP bears the burden of proving actual damages proximately caused by

15   the alleged bad faith conduct.

16        Coverage by estoppel is not a separate cause of action but is rather a tort remedy developed

17   by the Washington State Supreme Court for certain, limited instances of bad faith in the duty to

18   defend in the context of third-party liability claims. *Coventry v. American States Ins. Co.*, 136

19   Wn.2d 269, 285, 961 P.2d 933, 940, (1998); *Onvia, Inc.* at 129. In fact, in most instances

20   involving insurance disputes, the Courts have applied the traditional rules of estoppel.  This

21   includes proving by clear, cogent, and convincing evidence an inconsistent act and reasonable

22   reliance by the party seeking estoppel.  *Dombrosky v. Farmers Insurance Company of

23   Washington*, 84 Wn. App. 245, 928 P.2d 1127 (1996).  Only in certain, isolated cases of extreme

     bad faith have the Court's adopted coverage by estoppel in the liability insurance context. The

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EXTRA-CONTRACTUAL CLAIMS - 19**
3:17-cv-05098-BHS

Lether & Associates PLLC
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444 F: (206) 467-5544

coverage by estoppel remedy is only available in circumstances including, and limited to, the following:

- Bad faith denial of the defense obligation. *Truck Ins. Exch. V. VanPort Homes*, 147 Wn.2d 751 (2002), *Am Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398 (2010), and *Travelers Prop. Cas. Co. of Am. v. AF Evans Co.*, 2010 U.S. Dist. LEXIS 147204 (W.D. Wash. November 15, 2010).
- Bad faith conduct while defending under an ROR that prejudices the insured in the defense of the Underlying Lawsuit. Dkt. at 47; *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 169 P.3d 1 (2007).
- Bad faith failure to settle a claim within policy limits when presented with a reasonable opportunity to do so. *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 732 (2002).

This case does not present any of the above scenarios. It is undisputed that Travelers never denied the duty to defend. NWP was never left without a defense. Rather, Travelers did *exactly* what the Washington Supreme Court requires of an insurer where coverage for a third-party liability claim is in doubt – Travelers is defending under an ROR and has brought this Declaratory Judgment Action. *VanPort Homes* at 761.

In fact, the Washington State Supreme Court has held that defending under reservation is the precise manner in which an insurer can avoid exposure to coverage by estoppel.

. . . defending under a reservation of rights enables the insurer to protect its interests without facing claims of waiver or estoppel and to walk away from the defense once a court declares it owes no duty.

 By insuring itself against potentially disastrous findings of breach, bad faith, waiver, and coverage by estoppel, an insurer unquestionably benefits from its decision to defend under a reservation of rights—even when, as here, a court later finds that it owes no duty to continue that defense.

*Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 879-880, 297 P.3d 688, 691 (2013).

Moreover, Travelers has not engaged in any conduct that has prejudiced in the defense of the Underlying Lawsuit. In fact, the potential for prejudice associated with litigating this matter was the precise basis for this Court's Order on NWP's Motion for Bifurcation. (Dkt. at 60). Travelers has not engaged in any conduct that has caused any prejudice to the underlying defense. In fact,

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 20
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1   NWP has stipulated that it will <u>not</u> pursue any claims involving failure to split the file or that the

2   filing of the Declaratory Judgment Action is in and of itself an act of bad faith. Dkt. at 101.

3       This case certainly does not involve any issues relating to the duty to settle. NWP has never

4   raised this claim. There have been no settlement discussions between NWP and GVWD.  Falstad

5   Decl.

6       NWP's allegations in this matter involve alleged technical violations, alleged failure to timely

7   investigate and pay certain fees incurred by NWP for its own corporate counsel. A claim that was

8   never presented until NWP filed an Amended Counter claim. To be clear, all fees incurred by

9   NWP's actual defense counsel were, and continue to be, paid in full. Moreover, all the Ater

10  Wynne fees and interest were paid once those claims were presented. The only other claim NWP

11  has raised is the alleged "delay" before the ROR letter was issued. This is not at all unreasonable.

12  Moreover, even this argument ignores the fact Travelers committed to providing a defense

13  (through NWP's attorney) as of at least October 4, 2016, 47 business days after the tender. The

14  Washington Courts have never extended the coverage by estoppel remedy to this type of case. In

15  fact, the Court in *Mut. Of Enumclaw Ins. Co. v. Myong Suk Day* cited *Onvia, Inc.,* to make clear

16  that the coverage by estoppel remedy is not appropriate where an insurer has not failed to defend

17  an insured or has defended under an ROR. 197 Wn. App. 753, 764, 393 P.3d 786, 792, (2017).

18      In cases where there is not any bad faith breach of the duty to defend, the Washington Courts

19  have specifically held that the party asserting the tort of bad faith must prove actual damages

20  proximately caused by the alleged bad faith conduct.  *Onvia, Inc.* at 135.

21          … [T]he facts of this case do not present a situation substantially different from that in
        Coventry, where the focus of the bad faith claim was on acts that arose immediately

22      following the claim tender. *Coventry*, 136 Wn.2d at 274. As in Coventry, a reservation of
        rights or failure to defend <u>in any capacity</u> is not at issue. Therefore, no rebuttable

23      presumption of harm can arise here, and the measure of damages offered in *Coventry*
        should apply here also. The remedy of coverage by estoppel is not recognized in this

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS** - 21
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

context. . . As in *Coventry*, RMS must prove actual harm, and its "damages are limited to the amounts it has incurred as a result of the bad faith … as well as general tort damages."

*Onvia, Inc.* at 133 (*emphasis added*).

The issues in this case involve allegations of a delay immediately following the tender of the claim and untimely payments of defense fees. As in *Coventry* and *Onvia*, the Court should conclude that coverage by estoppel is not an available remedy and that NWP must prove actual damages and proximate cause,

This result makes sense given the stated policy set forth by the Supreme Court in adopting the coverage by estoppel. This remedy applies when there is a failure to provide a defense and leaves an insured unprotected. *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 10, 206 P.3d 1255, 1261, (2009). Even if the theory of a rebuttable presumption applies, Travelers has rebutted the presumption. As set forth above, all consequential damages claimed by NWP have been paid.

There is no authority from any other jurisdiction in the United States which supports the allegation of coverage by estoppel in a situation where there is a delay or a technical violation of a regulatory provision. Rather, in the limited number of states where estoppel is allowed, estoppel only applies when there is an actual denial of a defense resulting in there being no defense being afforded to the insured. For example, in other states that consider a coverage by estoppel remedy, the remedy is only considered in very narrow circumstances in the context of an unqualified refusal to defend or where the refusal to apply the remedy would sanction fraud or other injustice. *See Gotham Ins. Co. v. W. Coast Fire Prot. Corp.*, 2018 U.S. App. LEXIS 28502, *12, __ Fed. Appx. __, 2018 WL 4922774, *Doe for Doe v. Allstate Ins. Co.*, 653 So. 2d 371, 373, 1995 Fla. LEXIS 446, *4-5, 20 Fla. L. Weekly S 135, *Missionaries of Co. of Mary, Inc. v. Aetna Casualty & Surety Co.*, 155 Conn. 104, 113-114, 230 A.2d 21, 26, 1967 Conn. LEXIS 530, *13-14

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 22
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1   (emphasis added), *Ill. Farmers Ins. Co. v. Overman*, 186 F. Supp. 3d 938, 944, 2016 U.S. Dist.

2   LEXIS 62046, *13-14.

3        Moreover, this Court has previously considered NWP's and Travelers' Motions for Summary

4   Judgment regarding coverage. Dkt. at 47. NWP never raised or argued this estoppel theory in

5   response to Travelers' motion or in their own motion. The court has ruled on these issues.  NWP

6   cannot now attempt to avoid the Court's prior ruling by asserting a new coverage theory. To the

7   extent that NWP believed that coverage by estoppel was an available path to coverage in this

8   matter, it should have raised that coverage theory in its prior motions. If any party has waived this

9   issue or should be estopped, it is NWP. In essence, NWP is trying to turn the uncovered portions

10  of its potential liability into covered claims on the basis that Travelers allegedly did not act

11  quickly enough in responding to the claim or that Travelers did not immediately agree to pay

12  legal bills generated by its Oregon corporate counsel.

13  **C.      Northwest Pipe Cannot Support a Claim Under the Consumer Protection Act**

14        In order to prevail on a claim for violation of Washington's CPA, a plaintiff bears the

15  burden of proving five (5) elements: (1) An unfair or deceptive act or practice; (2) Occurring in

16  trade or commerce; (3) That impacts the public interest;  (4) Injury to his business or property;

17  and (5) That the injury was proximately caused by the unfair or deceptive act. *Hangman Ridge*

18  *Training Stables v. Safeco Title Ins. Co*., 105 Wn.2d 778, 784-85,719 P.2d 531, (1986). The

19  Washington Supreme Court has ruled that in order for an insured to prevail on a CPA claim, the

20  insured must establish each of the five elements of the Hangman Ridge test listed above. *See*

21  *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990).

22        The question of whether an act or practice is actionable under the CPA is a question of law.

23  *Dombrosky v. Farmers Ins. Co*., 84 Wn. App. 245, 260, 928 P.2d 1127, review denied, 131

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 23
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

Wn.2d 1018, 936 P.2d 417 (1997). An insured may establish a per se unfair trade practice under the CPA by demonstrating a violation of RCW 48.30.010 based upon a violation of WAC 28430-330. *Dombrosky*, 84 Wn. App. At 260, 928 P.2d 1127. However, even if there is a technical violation of a WAC provision, the Washington Courts have held that reasonableness is a complete defense to a CPA claim. *Keller v. Allstate Ins. Co*., 81 Wn. App. 624, 634, 915 P.2d 1140 (1996).

NWP cannot establish an issue of fact as to any act or omission on the part of Travelers because Travelers' conduct was reasonable at all times based upon the above arguments. There is absolutely no merit to any claim that Travelers somehow engaged in unfair or deceptive acts or practices. Moreover, NWP cannot establish any actual injury to business or property proximately caused by any unfair or deceptive act or practice on the part of Travelers. Failure to establish injury to business or property bars recovery under the CPA. *Hangman Ridge Training Stables v. Safeco Title Insurance Co*., 105 Wn.2d 778, 719 P.2d 531 (1986); *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992). In this case, the only conceivable damages identified by NWP in their discovery responses and by their 30(b)(6) deponent were for a calculation of interest on the Ater Wynne fees and their expert cost for their bad faith expert. As set forth above, Travelers paid the full amount of the calculated interest claimed by NWP. In regard to litigation costs fees incurred, in order to establish an extra contractual claim, those fees are not in themselves damages or injury to actual business or property. This issue is clearly addressed by the Washington Courts in the decision of *Sign-O-Lite Signs v. Delaurenti Florists*, *supra*. Such litigation costs are not considered actual damages under the Consumer Protection Act.

### III.    CONCLUSION

For the foregoing reasons, Travelers requests this Court grant summary judgment.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 24
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

DATED this 31st day of October, 2018.

                              LETHER & ASSOCIATES, PLLC

                              /s/ Thomas Lether_____
                              /s/ Eric Neal_____
                              Thomas Lether, WSBA No.18089
                              Eric Neal, WSBA No. 31863
                              1848 Westlake Avenue N, Suite 100
                              Seattle, WA 98109
                              P: (206) 467-5444/F: (206) 467-5544
                              tlether@letherlaw.com
                              eneal@letherlaw.com
                              *Attorneys for Plaintiff Travelers Property
                              Casualty Company of America and The Phoenix
                              Insurance Company*

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING EXTRA-CONTRACTUAL CLAIMS - 25
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies under the penalty of perjury under the laws of the State

3    of Washington that on this date I caused to be served in the manner noted below a true and

4    correct copy of the foregoing on the parties mentioned below as indicated:

5         Richard Dykstra, WSBA #5114
          51 University Street, Suite 201
6         Seattle, WA 98101
          P: (206) 501-4446 / F: (206) 623-0794
7         rdykstra@friedmanrubin.com
          Attorneys for Northwest Pipe Company

8         Douglas Oles
          Angelia Wesch
9         Oles Morrison Rinker Baker LLP
          701 Pike Street, Suite 1700
10        Seattle, WA 98101
          T: (206) 623-3427
11        oles@oles.com
          wesch@oles.com
12        Counsel for Greater Vancouver Water District

**By:**      **[ ] First Class Mail**          **[X] ECF**              **[  ] Legal Messenger**

13

14

Dated this 31st day of October, 2018, at Seattle, Washington.

15

16                                          */s/ Andrei V. Teretchenko*
                                          Andrei V. Teretchenko, Paralegal

17

18

19

20

21

22

23

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**REGARDING EXTRA-CONTRACTUAL CLAIMS - 26**
3:17-cv-05098-BHS

LETHER & ASSOCIATES PLLC
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544