The Hon. Benjamin H. Settle

1
2
3
4
5
6
7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

8

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign insurance company; THE PHOENIX INSURANCE COMPANY, a foreign insurance company, | No. 3:17-cv-05098-BHS **COUNTERCLAIM DEFENDANT'S TRIAL BRIEF** |
| Plaintiff, | |
| v. | |
| NORTHWEST PIPE COMPANY, a Washington corporation; and GREATER VANCOUVER WATER DISTRICT, a British Columbian statutory corporation, | |
| Defendant | |
| NORTHWEST PIPE COMPANY, a Washington corporation | |
| Counterclaim Plaintiff, | |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign insurance company; THE PHOENIX INSURANCE COMPANY, a foreign insurance company, | |
| Counterclaim Defendant. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendants Travelers Property Casualty Company of America and the Phoenix Insurance Company (hereinafter "Travelers") present the following Trial Brief.

## I.   INTRODUCTION

This is an insurance coverage action arising from an underlying lawsuit in British Columbia, Canada. Northwest Pipe Company, (hereinafter "Northwest Pipe") (an Oregon corporation), was sued by the Greater Vancouver Water District (hereinafter "GVWD") for claims relating to the Seymour-Capilano Filtration Project (hereinafter the "Project") that Northwest Pipe was involved with in British Columbia (hereinafter "Canadian lawsuit").

Northwest Pipe entered into a supply contract with the GVWD on September 20, 2006 for the manufacture and supply of steel liner and grout plugs for the Project. In the underlying litigation the GVWD alleges that there were defects with the steel liner and grout plugs used in the Project.

More than a year after the lawsuit was filed against Northwest Pipe, it tendered a claim for defense and indemnity coverage under its general liability policy issued by Travelers in Washington. Travelers promptly agreed to defend Northwest Pipe subject to a Reservation of Rights letter ("ROR"). The ROR letter was issued to Northwest Pipe on October 26, 2016. In the letter, Travelers agreed to retain Northwest Pipe's selected Canadian defense counsel, Don Smith and the SHK law firm. Travelers promptly paid all fees and costs associated with the defense of the underlying Canadian lawsuit through Northwest Pipe's selected counsel.

In addition to the defense being provided by the SHK law firm, Northwest Pipe also voluntarily retained Sam Sandmire and the Ater Wynne law firm, their local Oregon corporate counsel, to assist Northwest Pipe. Travelers initially stated in its ROR that fees for the services of Mr. Sandmire would not be paid for by Travelers. Northwest Pipe did not respond to

Travelers' ROR letter to challenge that position or to provide any further information to Travelers regarding the services of Mr. Sandmire. Travelers did not receive any invoices for its review from Mr. Sandmire for payment until after Travelers had filed its Declaratory Judgment Action. Once Travelers received the Ater Wynne bills and despite Travelers' concerns regarding the billing entries, and as a matter of good faith, Travelers has paid the Ater Wynne bills in full.

Travelers filed a Complaint for Declaratory Judgment on February 8, 2017 to obtain a ruling from the Court on the coverage issues involved with the claim. Seven months after Travelers agreed to defend Northwest Pipe and three months after Travelers filed its Declaratory Judgment Action, Northwest Pipe asserted, for the first time, extra-contractual claims against Travelers. Northwest Pipe is asserting bad faith claims based on the following:

1. Travelers' alleged wrongful denial of payment for fees and costs submitted by Northwest Pipe for its corporate counsel without a reasonable investigation;
2. Violation of Travelers' enhanced obligation of fairness towards its insured;
3. Travelers' alleged unreasonable delay in investigating coverage and in agreeing to defend Northwest Pipe.

Dkt. 48.

The evidence presented at trial will show that Northwest Pipe cannot meet its burden of proof as to the elements of each of the causes of action asserted in this matter. Northwest Pipe will not be able to establish the necessary elements of its bad faith claims. Specifically, Northwest Pipe will not be able to establish that Travelers denied Northwest Pipe's claim for defense costs and expenses.

Northwest Pipe will argue that Travelers breached the policy and failed to conduct a reasonable investigation of the claim, including an unreasonable delay in issuing the ROR letter.

1   Northwest Pipe will further argue that Travelers failed to investigate Travelers' claim

2   for defense fees and the interest on those fees from the Ater Wynne law firm.

3   Northwest Pipe's argument, though, ignores the actual evidence that will be presented at

4   trial.  Specifically, the evidence will establish that Travelers timely investigated the claim made

5   by Northwest Pipe, and timely agreed to pay the fees of Northwest Pipe's chosen defense

6   counsel.  Further, the evidence will establish that despite not being required to pay the Ater

7   Wynne legal fees, Travelers paid the fees in full and attempted to pay the full interest for those

8   fees.  Further, the evidence will establish that Travelers has paid the fees in full for Northwest

9   Pipe's choice of Canadian counsel to represent them in the Canadian lawsuit.

10   Northwest Pipe's extra-contractual claims are unsupported by the evidence.  The

11   evidence will establish that Travelers' conduct in the handling of Northwest Pipe's claim was

12   reasonable at all times.  Travelers personnel will testify to the extraordinary lengths to which

13   they went in order to provide service to Northwest Pipe in dealing with the claim presented,

14   which included complex coverage issues.  That testimony will be supported by claims handling

15   expert William Hight.  Travelers' reasonable approach to Northwest Pipe's claim and its

16   ongoing efforts to ensure that Northwest Pipe received all benefits to which it was entitled

17   under the Travelers policy of insurance, are a complete defense to each of Northwest Pipe's

18   extra-contractual claims.

19   Moreover, as is discussed below in some detail, the evidence does not support the

20   discreet elements of each extra-contractual claim for bad faith, and violation of the CPA.  The

21   failure of proof on the elements of each of the causes of action is similarly fatal to Northwest

22   Pipe's claims.

23   At trial, Travelers will present evidence establishing the following facts:

- The underlying suit was filed against Northwest Pipe in British Columbia, Canada on August 7, 2015. Dkt. 18.12.

- Northwest Pipe was served with the Amended Notice of Civil Claim against it on July 27, 2016. Dkt. 18.12. Northwest Pipe then tendered the claim to Travelers on July 28, 2016. Dkt. 107.

- The file was officially set up by Travelers on August 5, 2016 and assigned to Dana Falstad. *Id.* Also on August 5, a Canadian defense file was set up to address the specific defense issues with respect to the Canada lawsuit.

- On August 9, 2016, Travelers acknowledged receipt of the claim and began investigating the claim. Dkt. 107.2.

- Travelers never denied coverage to Northwest Pipe.

- On August 11, 2016, during Travelers' initial investigation of the claim, Ms. Falstad asked Northwest Pipe whether a response to the Canadian Complaint had been filed. Dkt. 107. At this point, Travelers was informed that Northwest Pipe had hired Canadian Attorney Don Smith to represent them in the Canadian action. Northwest Pipe also informed Travelers that it had retained Oregon counsel, Sam Sandmire, of the firm Ater Wynne. *Id*

- Travelers reviewed the operative pleadings to determine whether there was a duty to defend. Travelers also reviewed multiple policies which were potentially applicable to this claim.

- Travelers based its review upon the underlying Notice of Civil Claim, which is different from a normal Washington Complaint. Moreover, the potential coverage issues presented in the claim were complicated and involved a number

of potential coverage issues. Issues addressed included whether there was resulting third party property damage, whether there was a covered occurrence, whether Your Product or Your Work Exclusion applied, whether the Recall Exclusion applied, whether the Contractual Liability Exclusion applied, whether the Impaired Property Exclusion applied, potential late tender issues, which policies were potentially triggered, etc. Travelers was also obtaining information regarding any excess or umbrella coverages potentially triggered and the exposures and liabilities in the Canadian action.

- On September 19, 2016, Travelers retained Lether & Associates to provide legal advice on the duty to defend issue and to assist in drafting the Reservation of Rights letter. Dkt. 107.

-  On September 26, 2016, Travelers made the initial determination that the underlying complaint triggered a duty to defend. *Id.*

- On October 14, 2016, Lether & Associates provided a proposed Reservation of Rights letter to Travelers. Dkt. 104. Travelers thoroughly reviewed this letter and on October 26, 2016, Travelers issued its Reservation of Rights letter to Northwest Pipe. *Id.*

- The Reservations of Rights letter expressly invited Northwest Pope to provide any information that it may have had that had any bearing on the issues addressed in the letter. *Id.*

- Northwest Pipe did not respond to any of the questions posed by Travelers in the Reservation of Rights letter. Dkt. 107.

- Travelers filed this Declaratory Relief Action on February 8, 2017 to address a number of coverage issues. Dkt. 1.

- On March 24, 2017, Northwest Pipe filed an answer to Travelers' Complaint for Declaratory Relief and asserted a Counterclaim for Declaratory Judgment in its favor on the issue of coverage. Dkt. 13.

- Northwest Pipe did not raise coverage by estoppel as a remedy in its Answer and Counterclaims, nor did it assert any extra-contractual claims. *Id.*

- A series of Motions including Cross-Motions for Summary Judgment on the issue of coverage were then filed. Dkt. 14 & Dkt. 17.

- Northwest Pipe did not raise the coverage by estoppel argument in its Motion for Summary Judgment on the issue of coverage in response to Travelers' Cross-Motion for Summary Judgment. *Id.*

- On July 20, 2017 the Court granted in part Travelers' Motion for Summary Judgment in regard to coverage and found that there was no coverage for nearly every aspect of the claims asserted against Northwest Pipe in the Canadian lawsuit. The Court found that the Impaired Property Exclusion expressly applied and precluded coverage for anything other than potential third-party property damage involving the pipeline welds. Dkt. 47.

- On March 1, 2018, Travelers issued its first set of discovery to Northwest Pipe on the extra-contractual issues. Dkt. 106.1.

- Northwest Pipe refused to respond until a Protective Order was in place. Dkt. 106.2

- After multiple discovery conferences and supplements to Travelers' privilege log and production, Travelers renewed its request for Northwest Pipe's responses in a letter sent to Northwest Pipe on May 15, 2018. Dkt. 106.3.

- Travelers further reiterated its request in a letter dated August 14, 2018. Dkt.106.4.

- On August 31, 2018, Travelers finally received Northwest Pipe's discovery responses. Dkt. 106.5.

- In the responses, the only allegations involving bad faith are the alleged delay in regard to the ROR letter and issue of the payment of the Ater Wynne bills. *Id.*

- The only claimed damages are interest on the Ater Wynne legal fees and the fees that Northwest Pipe has paid its claims handling expert. *Id.*, pp. 11-12.

- Travelers conducted the 30(b)(6) deposition of Northwest Pipe on October 5, 2018.

- In that deposition the 30(b)(6) deponent of Northwest Pipe confirmed the only claims against Travelers arose from alleged delay in issuing the Reservation of Rights and Travelers' initial position on the Ater Wynne bills. Dkt. 106.7.

- In regard to any damages, Northwest Pipe's 30(b)(6) deponent confirmed the only damages were for interest for the Ater Wynne bills and Northwest Pipe's litigation costs. *Id.* In regard to the interest calculation, the Northwest Pipe 30(b)(6) deponent confirmed the interest amount was $5,196.33 *Id*

- Northwest Pipe's (30)(b)(6) deponent confirmed there is no other basis for a CPA claim. *Id.*

## II.   FACTUAL ANALYSIS

It is anticipated that Northwest Pipe will argue that Travelers improperly handled its initial investigation of the claims file. The evidence presented at trial will show that Travelers acted reasonably in all aspects of the claim handling process. Northwest Pipe will argue that Travelers failed to conduct a reasonable investigation thus violating the Consumer Protection Act and the Washington Administrative Code.  However, there is no evidence to support the claim that Travelers' investigation was unreasonable. As Northwest Pipe's own bad faith expert testified, there were thousands of documents that came in pursuant to Travelers' request for job file documentation and contracts. Dkt. 106.8. Further, as the facts on the record establish, Travelers investigated several aspects of the claim and came to a determination on the duty to defend issue within 41 business days of the initial tender.

Finally, Northwest Pipe will argue that Travelers failed to timely pay the Ater Wynne legal bills. However, Northwest Pipe never advised Travelers that Ater Wynne was actively defending Northwest Pipe. Further, Northwest Pipe never asked Travelers for reimbursement of the Ater Wynne bills and never made a claim for reimbursement based upon the supplementary payment policy provision. Dkt. 107.

The first time that Northwest Pipe asked for Travelers to pay for the Ater Wynne legal bills was when Northwest Pipe filed their Motion for Leave to Amend its Answer and Counterclaim. The motion and proposed pleading were filed on May 4, 2017. Dkt. 26. By email on July 21, 2017, Northwest Pipe offered to provide the Ater Wynne legal bills as, "part of an ER 408 settlement offer." Dkt. 107.8. Following this Court granting its motion, Northwest Pipe filed its Amended Answer and Counterclaims on July 24, 2017. (Dkt at 48). (Dkt at 48, pgs. 10-11). In response to the ER 408 email and amended counterclaim, on July 27, 2017, Travelers

1   wrote to Northwest Pipe in regard to the Ater Wynne issue and asked for copies of the legal bills

2   for review. Dkt. 107.9.

3       There was no response from Northwest Pipe.  As a result, in a letter dated August 17,

4   2017, Travelers once again asked for the legal bills. Dkt. 107.10. By letter of August 21, 2017,

5   Northwest Pipe finally responded to Travelers' requests, indicating that it would not provide

6   copies of the Ater Wynne bills unless a protective order were entered. Dkt. 107.11

7       During that time, the legal bills from defense counsel in the Canadian lawsuit were being

8   submitted to Travelers' claims personnel on a monthly basis without a protective order in place.

9   Once again, these bills were being processed and paid timely by Travelers. Dkt. 107.

10       This need for a protective order was solely at the request of Northwest Pipe. Dkt. 106.7.

11   Thereafter, Travelers and Northwest Pipe negotiated the terms of the Stipulated Protective

12   Order. The order was entered by the Court on December 12, 2017.  Dkt. 63.  On December 18,

13   2017, Northwest Pipe finally forwarded copies of the Ater Wynne legal bills.  These bills were

14   received on December 20, 2017. Dkt. 107.12.

15       Travelers will establish that it thoroughly reviewed the Ater Wynne bills once they were

16   provided by Northwest Pipe and, despite significant concerns, Travelers agreed to pay the bills

17   in their entirety. This agreement was set forth in Travelers' letter of January 11, 2018. Dkt.

18   107.13. The payment of the Ater Wynne bills was thereafter issued by Travelers on January 29,

19   2018. Dkt. 107.14. As set forth below, Travelers has subsequently attempted to pay for the full

20   interest claimed by Northwest Pipe on these fees. Dkt. 107.15.

21       Travelers will establish that it timely and reasonably investigated the claim from

22   Northwest Pipe. Travelers will further establish that it timely paid the Ater Wynne legal bills

23   and that any delay was the result of Northwest Pipe. Finally, Travelers will establish that it did

TRAVELERS' TRIAL BRIEF – 10

not violate the Consumer Protection Act. Accordingly, Travelers will establish that coverage by estoppel is not an available remedy to Northwest Pipe on the facts of this case.

### III.   ISSUES FOR TRIAL

#### A.   Statement of Issues

This matter proceeds to trial on the following issues:

- Whether Travelers is liable to Northwest Pipe for breaching its duty of good faith?

- Whether Travelers actions violated the Washington Consumer Protection Act?

- Whether Coverage by Estoppel is an available remedy for Northwest Pipe?

### IV.   ANALYSIS OF ISSUES

#### A.   Northwest Pipe Cannot Prove that Travelers Committed Bad Faith.

A claim for insurance bad faith under Washington law is recognized as a tort. *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499, 503 (1992). An essential element of any tort claim is that the alleged wrongful act caused harm. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962). Therefore, harm is an essential element of an action for bad faith handling of an insurance claim. *Cf. Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 627, 117 P.2d 644 (1941). In order for a party to present a claim for bad faith, the party must establish all of the following essential elements:

> 1) The existence of a duty;
> 2) breach of that duty; and
> 3) damages that were proximately caused by the breach of that duty.

The insured has the burden of proof as to each of these elements. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130, 196 P.3d 664 (2008). In order to establish a claim for insurance bad faith, an insured must be found to have acted in an *unreasonable, frivolous, or unfounded manner*. *St. Paul Fire & Marine Ins. Co. supra.* (Emphasis added). As long as the

insurer has a reasonable basis for its claim's decision, there is no bad faith. *Dombrosky v. FIE Ins. Co.*, 84 Wn. App. 245, 982 P.2d 1127; *Miller v. Indiana Ins. Co.*, 31 Wn. App. 475, 479, 642 P.2d 769 (1982); *Transcontinental Ins. Co. v. Washington Public Utilities District*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988). *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499, 503 (1992).

An insurer that has a reasonable basis for withholding payment under a policy cannot be said, as a matter of law, to be acting in bad faith. Washington Courts have stated the following:

> Bad faith requires a showing of frivolous and unfounded denial of benefits. Indiana denied coverage based on a reasonable interpretation of the policy; this was not bad faith as a matter of law…The mere denial of benefits due to a debatable question of coverage is insufficient.

*Miller v. Indiana Ins. Co.*, at 479. Further, the Court of Appeals has held as follows:

> Our courts have rejected attempts to base bad faith and CPA claims on legal arguments when, as here, there is no showing of bad faith, there is a debatable question regarding coverage for the loss, and the denial of coverage is based on a reasonable interpretation of the insurance policy.

*Capelouto v. Valley Forge Ins. Co.,* 98 Wn. App. 7, 22, 990 P.2d 414 (1999) (internal citations omitted).

In addressing reasonableness in the context of unfair claims provisions under the WAC's, the *Keller* Court stated:

> For the above reasons, we agree with the *Starczewski* court that "an incorrect denial of coverage does not constitute an unfair trade practice if the insurer had 'reasonable justification' for denying coverage."

*Keller v. Allstate Insurance Co.*, 81 Wn. App. 624, 634 (1996) (internal cites omitted).

Northwest Pipe will argue that Travelers has acted in an unreasonable, frivolous or unfounded manner in this case. However, the evidence will not support Plaintiff's allegations. Northwest Pipe will further argue that Travelers acted in bad faith by failing to disclose pertinent policy benefits.

It is well established by Washington Courts that whether an insurers' conduct is unreasonable can be determined as a matter of law. In *Cardenas v. Navigators Ins. Co.,* Navigators issued a liability policy.  *Cardenas v. Navigators Ins. Co.*, 2011 U.S. Dist. LEXIS 145194 (W.D. Wash. 2011).

In *Cardenas,* the insured alleged that Navigators failed to timely investigate and was liable for delay in defending Cardenas. *Id* at 14. Cardenas claimed that the claim was tendered to Navigators on February 23, 2010, and that Navigators did not respond with its ROR letter till May 18, 2011. However, Navigators acknowledged the claim within four days of tender. The ROR was issued 208 days after the initial tender by Cardenas. The court found that as a matter of law that the amount of time it took Navigators to respond and issue the ROR letter was reasonable.  The Court dismissed Cardenas' extra contractual claims for insurance bad faith and held:

> Violations, if any, of the 10 and 30 day time periods for acknowledging a claim and completing an investigation, are simple technical violations and standing alone, do not evidence any unreasonable conduct on the part of Navigators promptly responding to the tender.

*Cardenas*, at 16.

Northwest Pipe will argue that Travelers violated WAC § 284-30-370. WAC § 284-30-370, which requires every insurer to complete an investigation within 30 days after notification of a claim, **unless such investigation cannot reasonably be completed within such time.** WAC § 284-30-370, (**emphasis added**). Travelers will be able to show through evidence presented at trial that it promptly acknowledged Northwest Pipe's claim and began investigating. The evidence presented will show that Northwest Pipe's claim involved complicated choice of law jurisdictional issues as well as complex coverage issues. In order to properly assess the claim, Travelers had to engage claims representatives in both Canada and

Washington. Further, the evidence at trial will show that Travelers had to review the actual notice of a claim and all applicable polices of insurance in order properly analyze its duty to defend.

Finally, Washington law requires a liability insurer to review extrinsic evidence in an effort to analyze its duty to defend. See *Woo v. Fireman's Fund Ins. Co*., 161 Wn.2d 43, 53, 164 P.3d 454, 459, (2007). The evidence presented at trial will show that in order to properly determine if there was a duty defend, Travelers had to review a large number of files which included the underlying contract, job file information, and other materials involving the Canadian lawsuit.

The evidence will establish that Travelers had to do much more than just review the policy and the notice of claim. Given the exposures in regard to the claim and its complexities, the claim decision had to be fully reviewed, discussed, and approved by management. Travelers will show that the investigation was a complicated process which reasonably took more than 30 days. Accordingly, Northwest Pipe cannot establish that Travelers acted in bad faith by any unreasonable delay of the claim's investigation or any unreasonable denial of the claim.

### i. Travelers Did Not Act in Bad Faith by Failing to Disclose Pertinent Policy Benefits

The evidence presented at Trial will show that Northwest Pipe used its Motion for Summary Judgment on Extra-Contractual claims as an opportunity to add new theories of liability that had not been previously asserted. This includes Northwest Pipe's claim that Travelers acted in bad faith by failing to disclose pertinent policy benefits to Northwest Pipe. Northwest Pipe's own 30(b)(6) deponent did not address this claim in his deposition testimony and this claim was never asserted prior to Northwest Pipe's filing of its Motion for Summary

Judgment on Extra Contractual Claims. Dkts. 106 & 106.7. Further, the evidence will show that this claim for relief was never raised by Northwest Pipe in its discovery responses nor was it brought up by Northwest Pipe's bad faith expert, Dennis Smith, in his reports or at his deposition.

Even if a claim for failure to disclose pertinent policy benefits had been timely asserted by Northwest Pipe, there was no failure to disclose by Travelers. There is no benefit under the Travelers policy issued to Northwest Pipe that would provide coverage for two law firms, which is essentially what Northwest Pipe is claiming was not disclosed to them by Travelers. There is no legal basis for Travelers to have paid for a second law firm to defend Northwest Pipe in the underlying lawsuit. As such, there was no failure to disclose a pertinent benefit by Travelers. Further, Travelers did not misrepresent or conceal any policy information.

Accordingly, the evidence will show that Northwest Pipe's claim that Travelers acted in bad faith by failing to disclose pertinent policy benefits is without merit.

### ii. Travelers Did Not Deny Any Aspect of Northwest Pipe's Defense Cost

It is undisputed that Travelers paid the full amount of the Ater Wynne legal bills to Northwest Pipe despite their concerns with the billing practices of Ater Wynne. The evidence will further show that Travelers attempted to pay the interest on those bills to Northwest Pipe. Accordingly, the evidence will show that Travelers did not deny any aspect of Northwest Pipe's defense cost expenses.

The evidence highlighted above shows that Northwest Pipe never made a claim for Ater Wynne fees until it filed its Amended Counterclaim. Further, Northwest Pipe initially informed Travelers that Don Smith and the SHK law firm was defending Northwest Pipe in the underlying action. Travelers will present evidence that will show that in response, Travelers

1    paid the full amount of all defense fees and costs incurred through Don Smith and the SHK

2    firm timely as those bills were presented to Travelers for review and payment of the same.

3    The evidence will further show that Northwest Pipe never raised any issue in regard to the Ater

4    Wynne bills. Northwest Pipe did not present the Ater Wynne bills to Travelers for payment as

5    it did with the Don Smith and SHK bills. Northwest Pipe did not present Travelers with the

6    Ater Wynne bills until December 20, 2017.

7            The evidence presented at trial will show that there is no requirement under the policy

8    for Travelers to pay for the insured's personal counsel in addition to its defense counsel. The

9    policy only requires Travelers to defend a "suit" – which is the Canadian lawsuit that Travelers

10   is defending. The only other potential coverage that Northwest Pipe could have made a claim

11   for is under the supplementary payments provision of the policy. This provision is not

12   applicable here for two reasons. First, Travelers never requested Ater Wynne's assistance in

13   the defense of the underlying action. Second, Northwest Pipe never submitted a supplemental

14   payment claim to Travelers. Dkt. at 107. Further, the Policy states the following regarding

15   supplementary payments:

16               No other obligation or liability to pay sums or perform acts or
                 services is covered unless explicitly provided for under
17               Supplementary Payments Coverages A and B.

18   Dkt. 107.1

19           Washington law expressly allows liability insurers to select counsel for the insured. *See*

20   *Kruger-Willis v. Hoffenburg*, 198 Wn. App. 408, 416, 393 P.3d 844, 848, (2017) *citing*

21   *Johnson v. Cont'l Cas. Co.*, 57 Wn. App. 359, 362-63, 788 P.2d 598 (1990). Some states, such

22   as California, allow for independent counsel. However, that right is only allowed when there is

23   a conflict of interest between the insured and insurer in the defense of the underlying law suit.

1  *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1105-1106, 111 Cal. Rptr. 2d 181,

2  189-190, 2001 Cal. App. LEXIS 669, *23-24, 2001 Cal. Daily Op. Service 7398, 2001 Daily

3  Journal DAR 9105; *Foremost Ins. Co. v. Wilks*, 206 Cal. App. 3d 251, 260, 253 Cal. Rptr. 596,

4  601, 1988 Cal. App. LEXIS 1109, *16-17.

5      As the insured, Northwest Pipe was obligated to provide information to defense counsel

6  and Travelers. This information included records, job files, copies of policies, and other claim

7  related materials. The information provided by Northwest Pipe shows that all Ater Wynne did

8  was assist Northwest Pipe in complying with its obligations under the policy. Ater Wynne's

9  tasks included placing a litigation hold on records, providing record information to Travelers

10  and Don Smith, and vetting Mr. Smith as potential defense counsel. The evidence will further

11  show that Ater Wynne never conducted any defense related activities in regard to defending

12  Northwest Pipe. In fact, when asked about whether Ater Wynne filed any pleadings, conducted

13  any discovery, attended any hearings or conducted any depositions, Northwest Pipe's 30(b)(6)

14  deponent testified "[n]ot to my Knowledge." Dkt. 106.7, p.66, 21-25.

15      The evidence presented at trial will show that Don Smith was retained by Northwest

16  Pipe almost immediately after the suit was served. Accordingly, there was no conceivable harm

17  which could have occurred to Northwest Pipe during the period in which Travelers was

18  reviewing coverage issues. The evidence will show that Northwest Pipe voluntarily retained its

19  own coverage counsel. The evidence will further show that Northwest Pipe did not raise an

20  issue on the Ater Wynne fees till it filed its Motion for Leave to Amend the Complaint in order

21  to assert extra contractual claims.

22      Northwest Pipe argues that the Ater Wynne fees were addressed in the original

23  Counterclaim and that Travelers denied coverage for those fees in its Answer. This claim is

1   false. That specific claim is not presented in the original Counterclaim. Moreover, an insurer

2   has a right to take a position in a litigation forum without being exposed to a bad faith claim

3   based upon that position. *Richardson v. Gov't Emps. Ins. Co.*, 200 Wn. App. 705, 719-720, 403

4   P.3d 115, 124 (2017).

5       The evidence will show that following Travelers' request for the Ater Wynne bills,

6   Northwest Pipe delayed 97 days before it actually provided those bills. 26 business days later,

7   and despite concerns with the Ater Wynne billing, Travelers paid the full amount of defense

8   costs. Northwest Pipe then requested interest on those bills, and after confirming the amount

9   sought by Northwest Pipe with Northwest Pipe's 30(b)(6) representative, Travelers agreed to

10  pay the interest as well.

11      The evidence will show that Travelers did not deny any aspect of Northwest Pipe's

12  presented defense costs and that any delay in payment was the result of Northwest Pipe failing

13  to timely submit the Ater Wynne bills to Travelers for review.

14      ### iii. Travelers' Investigation of the Claim was Timely

15      The evidence presented at trial will show that Travelers conducted a thorough and

16  prompt investigation of Northwest Pipe's claim for benefits. As stated above, Travelers

17  promptly acknowledged the claim and began its investigation. The coverage aspects of

18  Northwest Pipe's claim were highly complicated and required Travelers to engage claims

19  representatives from multiple jurisdictions. WAC § 284-30-370 requires investigations to be

20  completed within 30 days if the investigation can reasonably be completed during that time

21  frame.  The evidence will show that due to the complexity of the jurisdictional and coverage

22  issues, it was reasonable for Travelers to take more than 30 days in its investigation. Northwest

23  Pipe's own bad faith expert testified:

1

2

Q.      Okay. And in the real world of providing coverage advise to insurance
        companies, getting a file, reviewing a file, giving a coverage opinion,
writing        up a coverage opinion, sometimes takes longer than 30 days?
A.      It can take longer than 30 days.

3

Dkt. 106.7

4

5

Further, Northwest Pipe is claiming that Travelers failed to investigate Northwest Pipe's

6

claim for payment of the Ater Wynne bills. However, the evidence will show that Northwest

7

Pipe never actually presented a claim for the Ater Wynne bills to Travelers until it submitted its

Amended Counterclaims. Dkt. 118.

8

9

It is well established by Washington Law that insurance companies have a duty to

10

investigate claims that have been presented to the insurer. No insurer has an obligation to

investigate claims which have not been presented to the insurer. The Washington Courts have

11

held as follows:

12

13

However, "[a]n insurer cannot be expected to anticipate when or if
an insured will make a claim for coverage; the insured must
affirmatively inform the insurer that its participation is desired.

14

15

*Mut. Of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 420 (2008). See also
*Unigard Ins. Co. v. Leven*, 97 Wn. App. 417 (1999.)

16

Northwest Pipe will argue that its August 11, 2016 email establishes a claim for its Ater

17

Wynne bills. Dkt.107.3. However, all this email does is state that Northwest Pipe had hired two

18

firms. At no point does that email ask Travelers for a reimbursement of fees or costs or for

19

Travelers to begin an investigation. There were no Ater Wynne bills submitted to Travelers for

20

processing until December 20, 2017.

21

The evidence at trial will clearly show that given the exposures in the claim and the

22

complex nature of the underlying claim, it was more than reasonable for Travelers to take more

23

than 30 days in concluding its investigation process. Further, the evidence will show that

TRAVELERS' TRIAL BRIEF – 19

Northwest Pipe did not make a claim for reimbursement of its Ater Wynne legal fees until its Amended Counterclaims were filed. Once that claim was presented, Travelers paid the legal fees. Accordingly, the evidence will show that Travelers' investigation of the claim was timely.

### iiii. Northwest Pipe Cannot Establish Any Evidence of Damages or Proximate Cause

The evidence presented at trial by Northwest Pipe will not be sufficient to establish proximate cause and actual damages. In order to establish a cause of action sounding in the tort of bad faith, Northwest Pipe is required to establish that they suffered **actual damage** proximately caused by the alleged unreasonable, frivolous or unfounded acts.  *See Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d 322, 329, 2002 Wash. LEXIS 53, *23, 32 ELR 20476.

Travelers will show that Northwest Pipe has not presented any evidence supporting that it was harmed by the acts or omissions of Travelers. The only evidence provided by Northwest Pipe in support of its extra-contractual damages' claims are general, conclusory statements offered in response to Travelers' letters and discovery requests.

Further, the only evidence provided by Northwest Pipe potentially relating to any injury or harm is its claim for $5,196.33 in interest and the cost of its expert in the amount of $5,800. The evidence will show that Travelers has attempted to pay the interest to Northwest Pipe and that the payment was rejected by Northwest Pipe. The only reason Northwest Pipe rejected that payment is to somehow claim that it is still harmed. The payment of the interest was not conditioned on any release or waiver of Northwest Pipe's claims. See Dkt. 107.15.

Northwest Pipe is now bringing a claim to recover the fees of its bad faith expert, Dennis Smith. Dennis Smith is purely a litigation expert. These fees were generated long after the litigation was first filed. Fees and costs incurred pursuing extra-contractual claims are not

actual damages under those legal theories. *Schreib v. Am. Family Mut. Ins. Co.*, 129 F. Supp. 3d 1129, 2015 U.S. Dist. LEXIS 118189; *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992).

Travelers will show that Dennis Smith provided two opinions in this case. Dkt. 114. The first addresses the Ater Wynne bills issue. Those bills were paid by Travelers on January 29, 2018, prior to any billing entries by Dennis Smith regarding this issue. Dkt. 122. As a result, the Ater Wynne legal fees were no longer at issue when Dennis Smith began reviewing it. Therefore, Dennis Smith's fees for his review of the Ater Wynne fee issue are unreasonable.

Mr. Smith further provided an opinion regarding Travelers' alleged improper file sharing and file splitting. This was a speculative issue based completely on assumptions made by Northwest Pipe. Dkt. 122. Mr. Smith even admitted in deposition that the theory involving this inappropriate sharing of information was highly speculative. Dkt. 117.3. As a result, Northwest Pipe has since dismissed this claim. Dkt. 101. As a result, this claim was an unsuccessful claim and Mr. Smith's fees to review the file splitting issue are unreasonable.

The evidence that Travelers will present at trial will show that Mr. Smith's fees were not incurred to investigate the claim or establish coverage. Regardless, Northwest has claimed damage for all of Mr. Dennis Smith's fees even though those fees include his reports and testimony on dismissed or moot issues. Any fees associated with unsuccessful claims are not recoverable. See, *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, (2007).

The evidence presented at trial will show that Travelers paid the Ater Wynne legal fees and attempted to pay the interest on those fees. Beyond those fees, Northwest Pipe has not presented evidence for any other actual damages to Travelers. Accordingly, Northwest Pipe will not be able to establish any evidence of damages.

**B.**     **<u>Coverage by Estoppel is not an Available Remedy to Northwest Pipe in this</u>**
**<u>Matter.</u>**

Coverage by estoppel is not a separate cause of action but is rather a tort remedy developed by the Washington State Supreme Court for certain, limited instances of bad faith regarding the duty to defend in the context of third-party liability claims. *Coventry v. American States Ins. Co.*, 136 Wn.2d 269, 285, 961 P.2d 933, 940, (1998); *Onvia, Inc.* at 129. In fact, in most instances involving insurance disputes, the Courts have applied the traditional rules of estoppel. This includes proving by clear, cogent, and convincing evidence an inconsistent act and reasonable reliance by the party seeking estoppel. *Dombrosky v. Farmers Insurance Company of Washington*, 84 Wn. App. 245, 928 P.2d 1127 (1996). The Courts in Washington have only adopted coverage by estoppel in certain extreme cases of bad faith. Northwest Pipe cannot present evidence that would show that Travelers acted in extreme bad faith. This issue is controlled by *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1 (2009).

The evidence presented at trial will establish that Travelers never denied the duty to defend nor did it ever leave Northwest Pipe without a defense. The evidence will further show that Travelers acted in the precise way required by the Washington State Supreme Court. Specifically, Travelers defended under a ROR and brought a Declaratory Judgment action to determine coverage.

The Washington State Supreme Court has held that defending under an ROR is the precise manner in which an insurer can avoid exposure to coverage by estoppel. The courts have stated as follows:

> . . . defending under a reservation of rights enables the insurer to
> protect its interests without facing claims of waiver or estoppel and

> to walk away from the defense once a court declares it owes no duty.
>
> By insuring itself against potentially disastrous findings of breach, bad faith, waiver, and coverage by estoppel, an insurer unquestionably benefits from its decision to defend under a reservation of rights—even when, as here, a court later finds that it owes no duty to continue that defense.

*Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 879-880, 297 P.3d 688, 691 (2013).

Travelers will show that Northwest Pipe's allegation regarding coverage by estoppel is based upon nothing more than a mere alleged technical violation. Northwest Pipe claims that Travelers failed to timely investigate and pay certain fees incurred by Northwest Pipe. As stated above, the fees incurred by Northwest Pipe have been paid and the interest on those fees was paid as soon as that claim was made. The only claim that Northwest Pipe has alleged is the delay before the Reservation of Rights was issued, which as stated above, was not an unreasonable delay. The evidence presented at trial will show that Washington Courts have never extended the coverage by estoppel remedy to this type of case. The Court in *Mutual of Enumclaw Ins. Co. v. Myong Suk Day* held that coverage by estoppel was not appropriate when the insurer did not fail to defend or defended under a reservation of rights. *Mut. of Enumclaw Ins. Co. v. Myong Suk Day*, 197 Wn. App. 753, 764, 393 P.3d 786, 792 (2017).

Washington Courts have further held that in cases where there is not any bad faith breach of the duty to defend, the party asserting the tort of bad faith must prove actual damages proximately caused by the alleged bad faith conduct. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130, 196 P.3d 664, 668 (2008).

> … [T]he facts of this case do not present a situation substantially different from that in Coventry, where the focus of the bad faith claim was on acts that arose immediately following the claim tender. *Coventry*, 136 Wn.2d at 274. As in Coventry, a reservation of rights or failure to defend <u>in any capacity</u> is not at issue.

> Therefore, no rebuttable presumption of harm can arise here, and the measure of damages offered in *Coventry* should apply here also. The remedy of coverage by estoppel is not recognized in this context. . . As in *Coventry*, RMS must prove actual harm, and its "damages are limited to the amounts it has incurred as a result of the bad faith … as well as general tort damages."

*Onvia, Inc.* at 133 (*emphasis added*).

Northwest Pipe is alleging that they are entitled to coverage by estoppel based on a delay following the tender of the claim and untimely payments of defense fees. As in *Coventry* and *Onvia,* the Court should conclude that coverage by estoppel is not an available remedy and that Northwest Pipe must prove actual damages and proximate cause.

Travelers will show that all consequential damages claimed by Northwest Pipe have been paid. Further, no other jurisdiction in the United States allows for coverage by estoppel when there is a reasonable delay or a technical violation of a regulatory provision. In the limited number of States where coverage by estoppel applies, it only applies when there is an actual denial of a defense resulting in there being no defense afforded to the insured.

Finally, Travelers will show that the Court has previously considered Northwest Pipe's and Travelers' Motions for Summary Judgment regarding coverage. Dkt. 47. Northwest Pipe did not raise the estoppel theory in its motion or in its response to Travelers' motion. Northwest Pipe waived any estoppel claim by not asserting it in its original Counterclaim and not addressing it in response to the Motions on coverage. A waiver is a voluntary relinquishment of a known right or conduct from which relinquishment can be inferred. *Dombrosky v. FIE Ins. Co.,* 84 Wn. App. 245, 255 (1996). The alleged bad faith conduct in this case was admittedly known to Northwest Pipe before the counterclaim was filed and the coverage issues were litigated. Northwest Pipe relinquished its rights to make those claims when it did not assert them in its original pleading. Northwest Pipe is now trying to turn the uncovered portions of its

TRAVELERS' TRIAL BRIEF – 24

potential liability in the underlying lawsuit into covered claims on the basis that Travelers did not act quickly enough in responding to the claim or that Travelers did not agree to pay the legal bills generated by Ater Wynne. Travelers will show that if any party should be estopped, it is Northwest Pipe. If Northwest Pipe believed that estoppel was available, it should have raised it in its previous coverage motions. The evidence presented by Travelers at trial will bar Northwest Pipe from bringing a claim for a coverage by estoppel remedy in this case.

C.     **Northwest Pipe Cannot Support a Claim Under the Consumer Protection Act**

In order to prevail on a claim for violation of Washington's CPA, a plaintiff bears the burden of proving five (5) elements: (1) An unfair or deceptive act or practice; (2) Occurring in trade or commerce; (3) That impacts the public interest;  (4) Injury to his business or property; and (5) That the injury was proximately caused by the unfair or deceptive act. *Hangman Ridge Training Stables v. Safeco Title Ins. Co*., 105 Wn.2d 778, 784-85,719 P.2d 531, (1986). The Washington Supreme Court has ruled that in order for an insured to prevail on a CPA claim, the insured must establish each of the five elements of the Hangman Ridge test listed above. *See Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990).  The question of whether an act or practice is actionable under the CPA is a question of law.   *Dombrosky v. Farmers Ins. Co*., 84 Wn. App. 245, 260, 928 P.2d 1127, review denied, 131 Wn.2d 1018, 936 P.2d 417 (1997). An insured may establish a *per se* unfair trade practice under the CPA by demonstrating a violation of RCW 48.30.010 based upon a violation of WAC 28430-330. *Dombrosky*, 84 Wn. App. At 260, 928 P.2d 1127. However, even if there is a technical violation of a WAC provision, the Washington Courts have held that reasonableness is a complete defense to a CPA claim. *Keller v. Allstate Ins. Co*., 81 Wn. App. 624, 634, 915 P.2d 1140 (1996).

Travelers will present evidence that it was reasonable at all times in the handling of the claim presented by Northwest Pipe. Northwest Pipe will not be able to show that Travelers engaged in any unfair or deceptive acts or practices. Travelers advised Northwest Pipe of its coverage decision within 47 business days from the date of tender. If Northwest Pipe was not advised by its lawyer of this decision, Travelers has no responsibility delay caused by its counsel. Even if the Court considers the first notice of the decision was in the Reservation of Rights letter, the time period between the date of tender and the Reservation of Rights letter was just 62 business days. This timeline is considerably shorter than the timeline considered in the *Cardenas* case wherein the Court found a period of over three months was reasonable. Northwest Pipe relies on *Weinstein v. Westport*, however the timeline in this case is shorter than the timeline set forth in *Weinstein*. Again, the Court found that to be a reasonable time period as a matter of law.

Further, based on the evidence that will be presented at trial, Northwest Pipe will not be able to establish any injury to business or property which will bar recovery under the CPA. *Hangman Ridge Training Stables v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986); *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992).

As set forth above, the only damages that Northwest Pipe will be able to establish are the interest on its Ater Wynne fees and its costs for its bad faith expert. However, the evidence will clearly show that Travelers attempted to pay the full amount of interest and that Northwest Pipe rejected that payment. Further, Washington Courts have held that litigation costs such as expert costs are not in themselves damages or injury to actual business or property. *See, Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992). In addition, the evidence will show the claimed expert fees to be unreasonable as they are for unsuccessful or moot

1  claims. The evidence presented by Travelers at trial will prevent Northwest Pipe from bringing a

2  viable claim under the consumer protection act.

3  **IV.    CONCLUSION**

4  Based on the foregoing, Travelers will ask the Court to dismiss this matter at the close

5  of Plaintiff's case in chief.  To the extent that Travelers is required to put on a defense case,

6  Travelers will ask the Court to instruct the jury in accordance with the law discussed herein

7  and will ask the jury to enter a verdict in favor of Travelers.

8  DATED this 2nd day of January, 2019.

9  LETHER & ASSOCIATES, PLLC

10  /s/ Thomas Lether
    /s/ Eric Neal

11  Thomas Lether, WSBA No. 18089
    Eric Neal, WSBA No. 31863

12  1848 Westlake Avenue N, Suite 100
    Seattle, WA 98109

13  T:  (206) 467-5444 / F: (206) 467-5544
    tlether@letherlaw.com

14  eneal@letherlaw.com
    *Counsel for Travelers Property Casualty*

15  *Company of America and The Phoenix*
    *Insurance Company*

16

17

18

19

20

21

22

23

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies under the penalty of perjury under the laws of the

3 State of Washington that on this date I caused to be served in the manner noted below a true

4 and correct copy of the foregoing on the parties mentioned below as indicated:

5

6

7

8

9

Richard Dykstra
Friedman Rubin
51 University Street, Suite 201
Seattle, WA 98101
T: (206) 501-4446
rdykstra@friedmanrubin.com
Ackel@friedmanrubin.com
kfriedman@friedmanrubin.com
*Counsel for Northwest Pipe Company*

10

11

12

13

14

Douglas Oles
Angelia Wesch
Oles Morrison Rinker Baker LLP
701 Pike Street, Suite 1700
Seattle, WA 98101
T: (206) 623-3427
oles@oles.com
wesch@oles.com
*Counsel for Greater Vancouver Water District*

15

**By:**     **[X] ECF**                    **[ ] E-mail**                    **[ ] Legal Messenger**

16

Dated this 2nd day of January, 2019, at Seattle, Washington.

17

18

*/s/ Elizabeth Kruh*
Elizabeth Kruh | Paralegal

19

20

21

22

23

TRAVELERS' TRIAL BRIEF – 28