UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign insurance company; THE PHOENIX INSURANCE COMPANY, a foreign insurance company,<br><br>           Plaintiffs,<br>    v.<br><br>NORTHWEST PIPE COMPANY, and GREATER VANCOUVER WATER DISTRICT, a British Columbian statutory corporation,<br><br>           Defendants.<br><br>NORTHWEST PIPE COMPANY,<br><br>           Counterclaim Plaintiff,<br>    v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign insurance company; THE PHOENIX INSURANCE COMPANY, a foreign insurance company,<br><br>           Counterclaim Defendants | CASE NO. C17-5098 BHS<br><br>ORDER DENYING COUNTERCLAIM PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant/Counterclaim Plaintiff Northwest Pipe Company's ("NPC") motion for partial summary judgment, Dkt. 102, and Plaintiffs/Counterclaim Defendants the Phoenix Insurance Company and Travelers Property Casualty Company of America ("Travelers") motion for summary judgment, Dkt. 104. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On February 8, 2017, Travelers filed a complaint for declaratory relief against NPC and Defendant the Greater Vancouver Water District ("District") seeking a declaration as to certain insurance contracts. Dkt. 1. The coverage dispute arises from claims made in an underlying action brought by the District against NPC in the Supreme Court of British Columbia. *Id.*, ¶¶ 3.1, 3.3. The District asserted numerous claims alleging NPC delivered defective pipes. Dkt. 18-12 at 10–11.

On June 22, 2017, the Court issued an order on the parties' opposing motions for summary judgment and concluded as follows:

> Pursuant to the above analysis, the Court concludes that the only aspect of the underlying litigation conceivably covered by the policy is any alleged "property damage" to the circumferential welds. That "property damage" could come in the form of either physical injury or loss of use, as either is conceivable under the allegations set forth in the underlying complaint. However, to the extent that the underlying lawsuit seeks to recover any other damages, those damages either fail to qualify as "property damage" or are subject to exclusion.
> Before the Court issues an order based on this finding, it requests that the parties submit supplemental briefing. The parties have not yet addressed how the Court should proceed in regards to the duty to defend when presented with a "mixed" lawsuit such as this, comprised of both covered and uncovered claims. In some jurisdictions, such as California,

> "[i]f any claim alleged in a lawsuit could be potentially covered under the policy, the insurer is obligated to defend against all claims alleged, even if some of those claims could not even potentially be covered, and even if such non-covered claims predominate." *Los Osos Cmty. Servs. Dist. v. Am. Alternative Ins. Corp.*, 585 F. Supp. 2d 1195, 1202 (C.D. Cal. 2008). However, at least one Washington decision strongly suggests that "mixed" lawsuits do not require the insurer to defend the entire lawsuit if an "effective means exists for prorating the costs of defense between the claims for which the defendant insurer provided no coverage from those which it did cover." *Nat'l Steel Const. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 14 Wn. App. 573, 576 (1975). In their supplemental briefing, the parties will address how the Court should tailor its final order, particularly in relation to the duty to defend, in light of its conclusion that the only claim conceivably covered by the policy is that for property damage to the circumferential welds.

Dkt. 38 at 21–22.

On July 20, 2017, the Court issued a supplemental order after the parties filed supplemental briefs. In relevant part, the Court concluded as follows:

> the Court finds that the claims in the underlying litigation are (at least at this point) substantially interrelated and Plaintiffs' duty to defend presently extends to the full breadth of the underlying lawsuit.
> \*\*\*
> should the Water District prevail in the underlying lawsuit, Plaintiffs will only be liable for "property damage" to the circumferential welds, as that term is defined in the policy.

Dkt. 47 at 5–6.

On July 24, 2017, NPC submitted an amended answer asserting claims against Travelers for (1) unreasonable delay of investigation and wrongful denial of claim, (2) wrongful denial of coverage without a reasonable investigation, which constitutes a violation of Travelers' duty of good faith and violates the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86, and (3) violation of the insurer's enhanced

ORDER - 3

obligation of fairness towards its insured. Dkt. 48, ¶¶ 50–65. On October 31, 2018, the parties filed a stipulation in which NPC withdrew its claim based on Travelers' alleged splitting of the coverage file from the defense file. Dkt. 101.

On October 31, 2018, NPC filed a motion for partial summary judgment and Travelers filed a motion for summary judgment. Dkts. 102, 104. On November 19, 2018, the parties responded. Dkts. 110, 116. On November 26, 2018, the parties replied. Dkts. 120, 125. On November 30, 2018, NPC filed a surreply requesting that the Court strike new arguments in Travelers' reply and new evidence Travelers submitted in support of its reply. Dkt. 130.[1]

## II. FACTUAL BACKGROUND

On July 28, 2016, NPC tendered the defense of the underlying action to Travelers. Dkt. 103-1 at 5. Travelers initially assigned claims professional, Dana Falstad ("Falstad"), to respond to NPC's tender. *Id.* at 25. On August 11, 2016, NPC notified Travelers that it had retained Portland, Oregon attorney Michael Sandmire ("Sandmire") at Ater Wynne, LLP ("Ater Wynne") and Vancouver, British Columbia attorney Don Smith ("Smith") at SHK Law Corp. ("SHK") as its defense counsel in the underlying litigation. *Id.* at 42. This notification consisted of one short sentence in a response email. *Id.*

---

[1] Although the Court agrees with NPC that Travelers improperly submitted new evidence in support of its reply, the error is harmless because the Court does not rely on the evidence to support its decisions. Therefore, the Court denies the motion to strike as moot.

ORDER - 4

On October 4, 2016, Travelers emailed Smith to advise that it would be retaining him to defend NPC. *Id.* at 48. Smith responded by informing Falstad that he had been working closely with Sandmire "to secure the project files and commence analysis of the assertions by the [District]." *Id.* at 47.

On October 26, 2016, Travelers sent a letter to NPC informing NPC that Travelers agreed to defend NPC in the underlying lawsuit under a reservation of rights. *Id.* at 56–78. Travelers also informed NPC that it agreed to "utilize" Smith as assigned counsel for NPC. *Id.* at 56. Regarding Sandmire, Travelers stated that NPC "independently" agreed to retain him and that Travelers would not pay for his services. *Id.* at 57. The letter also provided that, "[t]o the extent [NPC] has further information that clarifies any information in this letter or that supports your claim, Travelers requests that you produce any information that will contribute to the review above and which demonstrates coverage under the terms of the Policies." *Id.* at 76 . NPC alleges that Travelers failed to conduct any investigation into Sandmire's work before denying coverage for his fees.

In late 2016 and early 2017, Ater Wynne submitted invoices to NPC for Sandmire's representation. *Id.* at 92–95. NPC timely paid those invoices, which NPC claims totaled over $36,000. *Id.*; Dkt. 102 at 7. On July 27, 2017, Travelers' counsel requested copies of the Ater Wynne bills. Dkt. 106, ¶ 6. NPC did not immediately produce the bills because it required a protective order before production and counsel did not agree on such an order until early December 2017. *Id.* ¶¶ 8–9.

In August 2017, NPC retained an expert witness, Dennis Smith ("Expert"). Dkt. 103-1 at 97–98. NPC retained the Expert to investigate whether the services of Ater

Wynne were reasonable and necessary. Dkt. 102 at 7. The Expert's invoices total over $11,000. Dkt. 103-1 at 97–98.

On December 18, 2017, Travelers received the Ater Wynne invoices. Dkt. 106, ¶ 10. On January 11, 2018, after review of the bills, Travelers informed NPC that it would pay the bills. *Id.* ¶ 11. On January 29, 2018, Travelers issued payment. *Id.* ¶ 12. On October 24, 2018, Travelers agree to pay the full amount of interest that NPC claimed it was owed for the time between when NPC paid Ater Wynne and when Travelers reimbursed NPC. *Id.* ¶ 22. On October 26, 2018, NPC responded and rejected Travelers' payment because it did not want to allow Travelers' to cure the alleged breach of contract. Dkt. 117-7.

## III. DISCUSSION

NPC moves for partial summary judgment on the issues of whether (1) Travelers engaged in bad faith by failing to timely investigate and pay the Ater Wynne fees, (2) Travelers is estopped from denying coverage, and (3) Travelers violated the CPA. Dkt. 102. Travelers moves for summary judgment on all of NPC's extra-contractual claims. Dkt. 104.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

B.  **Bad Faith**

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389 (1992). "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 (2008) (quoting *Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 916 (2007)). If an insured prevails on a bad faith claim, the insurer is estopped from denying coverage. *Dan Paulson*, 161 Wn.2d at 920. "This is true even where coverage never in fact existed." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1234 (W.D. Wash. 2008).

The reasonableness of the insurer's actions "is typically a question of fact, but if reasonable minds could not differ that an insurer's denial of coverage was reasonable, the Court may reach the conclusion as a matter of law." *See Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003); *see also Lakehurst Condo. Owners Ass'n v. State Farm Fire and Cas. Co.*, 486 F. Supp. 2d 1205, 1213 (W.D. Wash. 2007). "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified." *Smith*, 150 Wn.2d at 486.

In this case, Travelers advances numerous arguments in support of its position that NPC fails to establish that Travelers acted in an unreasonable, frivolous, or unfounded manner. First, Travelers argues that it did not deny any aspect of NPC's claim. Dkt. 104 at 14–17. The Court agrees to a certain extent because NPC notified Travelers in a brief email that it had retained Sandmire as its Portland, Oregon counsel and Smith as its

Vancouver, British Columbia counsel. Dkt. 103-1 at 42. It is barely debatable that this establishes a "claim" for reimbursement of Sandmire's fees. NPC failed to provide any context for why an Oregon attorney was reasonable or necessary for its defense of an action in a foreign country or, more importantly, that it was seeking reimbursement for fees already incurred. At best, NPC's communication was ambiguous, which means its position starts off on shaky ground.

NPC, however, argues that once it gave Travelers notice that it retained Sandmire, the duty was on Travelers to investigate that aspect of the claim. Specifically, NPC argues that "the duty to investigate requires an insurer to do more than make general inquiries; an insurer must seek out information relevant to the processing of the insured's claim." Dkt. 110 at 4 (citing *Sparks v. Am. Family Mut. Ins. Co.*, C18-5038 BHS, 2018 WL 2159921, at *8 (W.D. Wash. May 10, 2018)). This is a selective citation for a broad, unsupported proposition. In *Sparks*, the Court stated as follows:

> As explained above, the Actual Cash Value provision in American Family's policy unambiguously requires that devaluations for depreciation be based on physical deterioration or obsolescence. American Family's depreciation reduction was applied to Sparks's claim without any inquiry or investigation into the condition or usefulness of the covered property prior to its loss; instead, when requesting supplemental information to determine depreciation, American Family asked only for the property's age.

*Sparks*, 2018 WL 2159921 at *8. Thus, the insurer in *Sparks* breached a specific provision in the contract regarding how property would be devalued. The insurer's actions were even more unreasonable because this Court had recently and repeatedly rejected this same insurer's practice of devaluation, yet the insurer was undeterred in continuing to devalue the insured's claims based solely on age. At most, *Sparks* stands

for the proposition that ignoring a specific provision in the contract by only investigating other factors to adjust a claim is unreasonable conduct. Therefore, the Court rejects NPC's contention that Travelers had a duty to investigate Sandmire's involvement based purely on NPC's notice that it had retained two attorneys.

Turning to Travelers' reservation of rights letter, Travelers stated that it "is not agreeing to pay for the services of Mr. Sandmire." Dkt. 103-1 at 56. This was a reasonable position because, without further explanation, there should be no need for the services of an additional attorney, especially one that is not even licensed to practice in the country of the underlying litigation. *Kruger-Willis v. Hoffenburg*, 198 Wn. App. 408, 416, (2017), *review denied sub nom. Kruger-Willis v. Hofferbert*, 189 Wn.2d 1010 (2017) ("an insurer generally has the right to select the defense counsel who will represent its insured."); *see also Johnson v. Cont'l Cas. Co.*, 57 Wn. App. 359, 362–63 (1990) (holding that an insurer had no obligation to pay for counsel the insured retained). Moreover, once NPC explicitly demanded reimbursement for Sandmire's fees, Travelers requested supporting documentation and then, after finally receiving the bills, promptly paid the fees.[2] Travelers even offered to pay the interest on NPC's payments. Therefore, even if NPC submitted a formal claim instead of providing informal notice, Travelers has provided a reasonable basis for its actions. *Smith*, 150 Wn.2d at 486

---

[2] It is undisputed that there was some delay in Travelers paying the bills once it requested documentation, but the delay was due to the parties negotiating a protective order. There is no evidence that this delay is attributable to Travelers.

In sum, no reasonable juror could conclude that Travelers acted in an unreasonable, frivolous, or unfounded manner in the investigation or alleged denial of Sandmire's fees. Accordingly, the Court grants Traveler's motion for judgment on NPC's bad faith claims. Even if a question of fact exists on the issue of reasonableness and the claims should be presented to a fact finder, the Court concludes that NPC has failed to establish any conduct that warrants the drastic remedy of full coverage by estoppel or enhanced damages. At most, NPC was harmed by the loss of use of its own money for a certain period of time. This alleged harm, however, does not establish causation to overcome the limits of coverage defined in the Court's previous order. In other words, NPC has failed to show that the shield of estoppel may be used as a sword to obtain complete coverage of the claims in the underlying litigation. Therefore, any finding of bad faith would at most entitle NPC to interest on the outstanding bills and possibly, yet highly unlikely, an enhancement of that amount.

Based on these conclusions, the Court also denies NPC's motion for partial summary judgment on its extra-contractual claim.

**C.   CPA**

It is undisputed that NPC's CPA claim is based on a finding of bad faith or violation of specific provisions of the Washington Administrative Code ("WAC"). Based on the rulings above, the Court concludes that NPC has failed to establish either unreasonable conduct or a failure to abide by the cited provisions of the WAC. Therefore, the Court grants Travelers' motion on NPC's CPA claim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that NPC's motion for partial summary judgment, Dkt. 102, is **DENIED** and Travelers' motion for summary judgment, Dkt. 104, is **GRANTED**.

Dated this 3rd day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge